Michael CERBO, Complainant–Appellant,

and

Colorado Secretary of State, Intervenor,

v.

PROTECT COLORADO JOBS, INC., Respondent–Appellee,

and

Office of Administrative Courts, Appellee.

No. 09CA0587.

Colorado Court of Appeals, Div. VII.

May 13, 2010.

As Modified June 10, 2010.

Isaacson Rosenbaum, P.C., Mark G. Grueskin, Blain D. Myhre, Denver, Colorado, for Complainant–Appellant.

John W. Suthers, Attorney General, Monica M. Márquez, Deputy Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Intervenor.

Hackstaff Gessler LLC, Scott E. Gessler, Mario D. Nicolais, II, Denver, Colorado, for Respondent–Appellee.

John W. Suthers, Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge J. JONES.

Complainant, Michael Cerbo, appeals the administrative law judge's order determining that respondent, Protect Colorado Jobs, Inc. (PCJ), was not an "issue committee" within the meaning of Colorado Constitution article XXVIII, subsection 2(10)(a) with respect to a right-to-work initiative, Amendment 47, that was put to Colorado voters in the November 2008 election, because PCJ did not have "a major purpose" of supporting that initiative.[1] Based on that determination, the ALJ concluded that PCJ had not violated subsections 1–45–108(1)(a)(I) and (3), C.R.S. 2008, of the Fair Campaign Practices Act (Act) by failing to register and file reports of its contributions and expenditures relating to Amend-

ment 47 with the Secretary of State. We conclude that the facts in the record demonstrate that PCJ had a major purpose of supporting the initiative. Accordingly, we reverse the order and remand for further proceedings.

## I. Background

### A. Relevant Statutory and Constitutional Provisions

The Act imposes registration and reporting requirements on various entities, including "issue committees." Specifically, during the election cycle at issue, subsection 1–45–108(3) of the Act required issue committees to register with the Secretary of State before making or accepting any contributions.[2] Subsection 1–45–108(1)(a)(I) requires issue committees to "report to the appropriate officer their contributions received, including the name and address of each person who has contributed twenty dollars or more; expenditures made, and obligations entered into by the committee or party."

Article XXVIII, subsection 2(10)(a) defines an "issue committee" for purposes of the Act as

> any person, other than a natural person, or any group of two or more persons, including natural persons:
>
> (I) That has a major purpose of supporting or opposing any ballot issue or ballot question; or
>
> (II) That has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question.

Despite the article's use of the ordinarily disjunctive "or," the Secretary of State has determined that an organization must satisfy both subsections (I) and (II) to be considered an issue committee. Fair Campaign Practices Act Rule 1.7(b), 8 Code Colo. Regs. 1505–6. No party challenges that determina-

---

1. The initiative would have prohibited any employer from requiring a person to join or pay money to a labor organization as a condition of employment.

2. Effective September 1, 2009, the Act requires issue committees to register "within ten calendar days of accepting or making contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question." § 1–45–108(3.3), C.R.S. 2009.

tion. The ALJ in this case made no finding under subsection (II).

### B. Facts

The material facts are essentially undisputed. We take the following facts from the ALJ's findings and the stipulated record.

In March 2007, several individuals, including Ryan Frazier and Andrew Zuppa, began discussing placing a right-to-work initiative on the next general election ballot. Within the next several months, John Berry, with the help of Curt Cerveny, Julian Cole, and Mr. Frazier, drafted the proposed right-to-work initiative. Mr. Frazier and Mr. Cole became the initiative's named proponents. By May 2, 2007, the right-to-work initiative— Initiative 2007–2008 # 38—was listed on the Secretary of State's website and scheduled for a title board hearing.

Two days later, Mr. Berry incorporated PCJ as a nonprofit organization. He served as PCJ's secretary-treasurer, registered agent, and attorney. Mr. Cerveny served as its president.

On August 1, 2007, the title board set the title for Initiative 2007–2008 # 38. However, on September 11, 2007, the proponents withdrew that initiative and submitted a new right-to-work initiative—Initiative 2007–2008 # 41—in its place. The same individuals who had drafted the first initiative drafted its replacement. The title board set the title for Initiative 2007–2008 # 41 on October 10, 2007.

On November 19, 2007, Mr. Berry registered the Colorado Right to Work Committee (CRWC) as an issue committee for Initiative 2007–2008 # 41 with the Secretary of State. Mr. Cerveny ran CRWC on a day-to-day basis. CRWC was formed expressly to obtain enough signatures to have the initiative placed on the November 2008 general election ballot.

On December 7, 2007, Kennedy Enterprises contracted with PCJ to circulate petitions for the signatures necessary to place Initiative 2007–2008 # 41 on the November 2008 ballot. The contract identified the initiative as "PCJ's initiative." PCJ designated Mr. Zuppa as its agent for receiving the signatures. PCJ paid for Kennedy Enterprises' services either by writing checks directly to Kennedy Enterprises or by writing checks to CRWC, which would then pay Kennedy Enterprises. Payments through CRWC were handled by Mr. Cerveny, who would transfer funds from PCJ to CRWC and then write a check from CRWC to Kennedy Enterprises. PCJ ultimately paid almost $300,000 for the petition circulation services.

The Secretary of State ultimately certified sufficient signatures for Initiative 2007–2008 # 41, and it was placed on the November 2008 statewide ballot as Amendment 47.

PCJ never registered as an issue committee nor did it ever submit any reports of contributions and expenditures.

On April 8, 2008, Mr. Cerbo filed a complaint with the Secretary of State alleging that CRWC had violated the Act, sections 1–45–101 to –118, C.R.S.2009, by, among other things, failing to report certain contributions from PCJ. An ALJ found that CRWC had violated the Act's reporting requirements as to those contributions. CRWC did not appeal that finding.

On June 11, 2008, Mr. Cerbo filed a complaint with the Secretary of State alleging that PCJ had violated the Act by failing to register as an issue committee with the Secretary of State, see § 1–45–108(3), and by failing to file reports of its contributions and expenditures with the Secretary of State, see § 1–45–108(1)(a)(I), because it was an "issue committee" with respect to Amendment 47. Based on the record before her, which consisted of the evidence received in the proceeding on Mr. Cerbo's complaint against CRWC and transcripts of the depositions of Mr. Cole and Mr. Frazier, the ALJ (who had also decided the CRWC complaint) determined that Mr. Cerbo had failed to prove by a preponderance of the evidence that PCJ had a major purpose of supporting Initiative # 41 and, therefore, PCJ was not an issue committee subject to the Act's registration and reporting requirements.

On appeal, Mr. Cerbo challenges the ALJ's conclusion that PCJ did not have a major purpose of supporting Initiative 2007–2008 # 41. In addition to responding to that chal-

lenge, PCJ contends that the phrase "a major purpose" in article XXVIII, subsection 2(10)(a)(I) is unconstitutionally vague and overbroad on its face.

## II. "A Major Purpose"

### A. Standard of Review

■ The parties urge differing standards of review: Mr. Cerbo argues that the question whether an entity has "a major purpose" of supporting (or opposing) a ballot issue is one of law, which we should review de novo, while PCJ argues that the question is one of fact, which we must review only for clear error. The appropriate standard of review in this context has not heretofore been expressly determined by any Colorado appellate court. We conclude that the question is a mixed question of law and fact: we review findings of historical fact for clear error, but the ultimate determination of "a major purpose" is one of law that we review do novo.

■ Whether an entity has "a major purpose" of supporting or opposing a ballot issue necessarily requires interpretation of the meaning of that phrase and application of the standard to particular facts. The interpretation of a constitutional provision and the application of a constitutional standard present questions of law subject to de novo review. *Danielson v. Dennis,* 139 P.3d 688, 690–91 (Colo.2006); *City of Golden v. Parker,* 138 P.3d 285, 289 (Colo.2006); *Washington County Bd. of Equalization v. Petron Development Co.,* 109 P.3d 146, 149 (Colo.2005); *see Independence Institute v. Coffman,* 209 P.3d 1130, 1135 (Colo.App.2008), *cert. denied,* No. 09SC26, 2009 WL 1514919 (Colo.), *cert. denied,* —— U.S. ——, 130 S.Ct. 625, 175 L.Ed.2d 479 (2009).

■ Further, the registration and reporting requirements at issue implicate the First Amendment rights of freedom of speech and association. *See Citizens United v. Federal Election Comm'n,* 558 U.S. ——,

——, 130 S.Ct. 876, 914, —— L.Ed.2d ——, —— (2010) (observing that "disclosure requirements may burden the ability to speak"); *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment"); *Common Sense Alliance v. Davidson,* 995 P.2d 748, 749 (Colo.2000) (observing that reporting provisions of the Act implicate "constitutional rights concerning freedom of association and freedom of speech"). Where these rights are implicated, an appellate court should undertake an independent review of the record to assure that the judgment does not impermissibly intrude on the field of free expression. *Lewis v. Colorado Rockies Baseball Club, Ltd.,* 941 P.2d 266, 270–71 (Colo.1997) (citing *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). This type of review is essentially de novo. *Id.* at 271. Thus, Colorado appellate courts have regarded issues pertaining to the application of the First Amendment as legal issues subject to de novo review. *See, e.g., id.* (holding that the question whether a place is a public forum is subject to de novo review; observing that the question may be a mixed question of law and fact, but where the underlying facts are undisputed, it is entirely a question of law); *NBC Subsidiary (KCNC–TV), Inc. v. Living Will Center,* 879 P.2d 6, 11 (Colo.1994) (whether an alleged defamatory statement is constitutionally privileged is a question of law); *McIntyre v. Jones,* 194 P.3d 519, 527 (Colo. App.2008) (whether a person is a limited purpose public figure is a question of law).[3]

Here, the facts were largely stipulated to by the parties. The record consists of documents and deposition transcripts. With the possible exception of what PCJ's founders intended to pursue through PCJ, no facts were in dispute. And Mr. Cerbo does not challenge any of the facts as found by the ALJ from the record. Thus, the question

---

**3.** We are not persuaded by PCJ's contention that *Colorado Education Ass'n v. Rutt,* 184 P.3d 65 (Colo.2008), dictates clear error review in this context. There, the court applied such review to a finding that a union had "made promises, goals, and commitments" to its members to help

a candidate for office get elected, but did not make any promises to the candidate. *Id.* at 77. That finding, unlike the application of the major purpose standard to the facts here, was one of historical fact.

before us is whether the facts as found by the ALJ show that PCJ had a major purpose of supporting Initiative 2007–2008 # 41. That is a question of law. Therefore, we review de novo the ALJ's conclusion that PCJ did not have such a purpose.

### B. Meaning of "a Major Purpose"

■ Neither article XXVIII nor the Act defines "a major purpose." Nor has the Secretary of State defined the term by regulation.

■ When interpreting a constitutional amendment, we must "ascertain and give effect to the intent of the electorate adopting [it]." *Zaner v. City of Brighton*, 917 P.2d 280, 283 (Colo.1996); *accord Lobato v. State*, 218 P.3d 358, 375 (Colo.2009); *Colorado Educ. Ass'n v. Rutt*, 184 P.3d 65, 80 (Colo. 2008) (construing article XXVIII); *Lambert v. Ritter Inaugural Committee, Inc.*, 218 P.3d 1115, 1121 (Colo.App.2009). To determine that intent, we first look to the amendment's plain language. *Lobato*, 218 P.3d at 375; *Zaner*, 917 P.2d at 283; *Lambert*, 218 P.3d at 1121; *see also Common Sense Alliance*, 995 P.2d at 753 (applying this principle to construction of the statutory term "issue committee"). If the intent is not clear from the plain language, we must " 'construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment.' " *Lobato*, 218 P.3d at 375 (quoting *Zaner*, 917 P.2d at 283); *accord Patterson Recall Committee, Inc. v. Patterson*, 209 P.3d 1210, 1214 (Colo.App.2009).

■ We perceive no ambiguity in the phrase "a major purpose." Though "major" has several commonly understood meanings, in the context of the amendment it is apparent that it means "notable or conspicuous in effect or scope: considerable, principal." *Webster's Third New International Dictionary* 1363 (2002); *see North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 328 (4th Cir.2008) (Michael, J., dissenting) (attributing the same meaning to "a major purpose"

in North Carolina's campaign finance law). "Considerable" means "rather large in extent or degree." *Webster's Third New International Dictionary* 483.[4] And by using the indefinite article "a," the phrase "a major purpose" brings within its ambit organizations for which promoting a ballot issue is but one major purpose. *See Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' "). That is, an organization may be deemed an issue committee if one of its major purposes is supporting a ballot issue; supporting a ballot issue need not be the organization's sole purpose.

We therefore conclude that an organization has "a major purpose" of supporting a ballot issue if such support "constitutes a considerable or principal portion of the organization's total activities." *North Carolina Right to Life*, 525 F.3d at 329 (Michael, J., dissenting).

### C. Application

■ In *Independence Institute*, the division did not articulate a definition of "a major purpose," but it identified three nonexclusive factors one could look to in determining whether an organization has a major purpose of supporting a ballot issue: (1) the purposes stated in the organization's charter, articles of incorporation, and by-laws; (2) the purposes of the organization's activities and annual expenditures; and (3) the scope of the issues addressed in the organization's print and electronic publications. *Independence Institute*, 209 P.3d at 1139. In addition, the division noted, with apparent approval, that the ALJ in that case had looked to the length of time the organization had existed, its original purpose, its organizational structure, the various issues in which it had been involved, and the amount of money it had spent on the

---

4. In determining the meaning of constitutional or statutory phrases or words, we may look to dictionary definitions. *See, e.g., Washington County Bd. of Equalization*, 109 P.3d at 152; *Tidwell v. City & County of Denver*, 83 P.3d 75, 82 (Colo.2003); *Colorado Citizens for Ethics in Government v. Committee for American Dream*, 187 P.3d 1207, 1215 (Colo.App.2008) (construing article XXVIII and the Act).

issue in question in relation to its annual budget. *Id.*

Here, the ALJ articulated the three factors expressly identified in *Independence Institute* and determined that PCJ did not have a major purpose of supporting Initiative 2007–2008 # 41 based on the following findings:

- PCJ was formed before the initiative became a ballot issue;
- PCJ was formed for purposes "other than" to support the initiative;
- PCJ was involved in business-related activities in Colorado "other than just" activities relating to the initiative; and,
- based on Mr. Cerveny's and Mr. Berry's testimony, PCJ had worked on a newsletter to be published to nearly 65,000 businesses in Colorado, and its officers had considered getting involved in a statewide gambling initiative and setting up a political blog website (though ultimately PCJ did not pursue either venture).

We conclude that the ALJ erred in her analysis in three ways: (1) she placed undue weight on the fact PCJ had purposes other than supporting the initiative; (2) she gave too much weight to activities that PCJ merely considered undertaking while giving too little weight to what it actually did; and (3) she failed to give weight to other facts relevant to the inquiry.

█ As the ALJ recognized, the timing of PCJ's formation vis-à-vis the ballot issue is a relevant consideration. Where an organization has a track record of engaging in a variety of activities over a relatively long period of time, it may indicate that supporting or opposing a particular ballot issue is not a major purpose of the organization. *See, e.g., Common Sense Alliance*, 995 P.2d at 749–50 (observing that the organization had engaged in educational and other activities for more than two years before it proposed and supported the ballot initiative at issue; construing a statutory definition of "issue committee" since superseded by article XXVIII, section 2); *Independence Institute*, 209 P.3d at 1134, 1139 (noting the Independence Institute's then twenty-three-year history of activities relating to a variety of issues and approving the ALJ's consideration of that history). Conversely, however, the absence of such a track record may indicate that an activity in which an organization is engaged may be a major purpose of the organization.

Here, though the initiative was, technically speaking, not yet an "issue" when PCJ was formed, *see* Rule (1.6), 8 Code Colo. Regs. 1505–06 (providing that a matter will be considered an "issue," as relevant here, when it has had a title designated and fixed in accordance with law), PCJ was formed a mere two days after the original right-to-work initiative had been scheduled for a title board hearing, and by persons involved in drafting the initiative. Therefore, the fact the initiative was not officially a ballot issue when PCJ was formed means little. The timing of PCJ's formation vis-à-vis the efforts to place the right-to-work initiative on the ballot is more illuminating.

█ We also consider PCJ's stated purposes. Mr. Berry testified that PCJ was formed to promote and protect businesses in Colorado, to provide an educational forum for Colorado businesses, and to promote Colorado's economic climate. The ALJ apparently found Mr. Berry's testimony credible, and Mr. Cerbo has not contested this point. Therefore, we accept that these are the general purposes for which PCJ was formed. *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd. P'ship*, 226 P.3d 1155, 1161 (Colo.App.2009). But while an organization's stated purposes are relevant to the inquiry, *see Common Sense Alliance*, 995 P.2d at 749–50; *Independence Institute*, 209 P.3d at 1139, they are clearly not dispositive. What an organization actually does must carry more weight than its stated purposes so that an organization's "regulable conduct [does not] escape regulation merely because [its] stated purposes were misleading, ambiguous, fraudulent, or all three." *League of Women Voters v. Davidson*, 23 P.3d 1266, 1275 (Colo.App.2001).

█ PCJ's stated purposes, as testified to by Mr. Berry, are, at the very least, broad enough to encompass supporting the right-to-

work initiative. An organization should not be permitted to evade its obligations under the Act simply by articulating a purpose broad enough to include a *potentially* large number of activities.

██ Similarly, the fact an organization may be formed for purposes "other than" to support a ballot issue, as the ALJ concluded here, does not foreclose the possibility that it was formed, at least in part, to support a ballot initiative. But, as discussed above, since an organization's purpose need not be solely to support or oppose a ballot issue to qualify as an issue committee, the focus in considering the major purpose or purposes of a multi-purpose organization should, as a logical matter, be primarily, though not exclusively, on its actual activities. *See League of Women Voters*, 23 P.3d at 1275 (applying the "political committee" provision of the Act); *see also Common Sense Alliance*, 995 P.2d at 749–50 (noting the organization's stated purposes, but then analyzing whether it had a major purpose of supporting or opposing a ballot initiative based on its actual activities). We turn now to an examination of PCJ's actual activities.

Mr. Cerveny testified that, as of the date of the hearing before the ALJ, July 29, 2008, which was more than one year after PCJ had been formed, PCJ had spent approximately $300,000 supporting Initiative 2007–2008 # 41 and about $100,000 on other unspecified matters. He further testified that although he and Mr. Berry discussed PCJ getting involved in other business-related issues, PCJ had not actually taken steps to do so. Mr. Berry testified that, until the date of the hearing, all of PCJ's activities had involved Initiative 2007–2008 # 41. The ALJ found that between October 10, 2007 (the date the title for the initiative was fixed) and April 20, 2008, PCJ spent most of its time and money on Initiative 2007–2008 # 41.

Finally, the interrelationships of PJC's officers and agents with the initiative and other organizations supporting the initiative are important factors. The record shows that Mr. Berry, one of PCJ's officers, drafted the original and ultimate initiative and defended them throughout administrative and court proceedings necessary to have the initiative

placed on the ballot. PCJ paid most of Mr. Berry's attorney fees for these activities. Mr. Berry also created and registered CRWC and was responsible for making the appropriate filings for that organization with the Secretary of State.

In addition, there were three organizations intimately involved in promoting Initiative 2007–2008 # 41: Politically Direct, PCJ, and CRWC. Mr. Cerveny was the owner of Politically Direct, the president of PCJ, and the person who decided to create CRWC and register it as an issue committee. He controlled the checking accounts of Politically Direct, PCJ, and CRWC. Because CRWC was physically located in the same office as Politically Direct, Mr. Cerveny also oversaw CRWC's day-to-day operations. As noted, PCJ, acting through Mr. Cerveny, funded CRWC's activities, all of which related to the initiative. Mr. Zuppa was involved in the initial discussions concerning placing a right-to-work initiative on the ballot, and when PCJ needed to designate someone to receive the signatures it was paying Kennedy Enterprises to collect, it designated Mr. Zuppa.

Such significant overlap in officers, agents, and representatives, sharing of physical location, and transfers of financial resources make it difficult to tell where one organization begins and another ends. The picture created by the undisputed record evidence is one of a group of persons cooperating, both individually and through organizations, including PCJ, to support the right-to-work initiative. In PCJ's case, that might not have been its sole purpose, but it was the purpose toward which it devoted a considerable portion—indeed, an overwhelming portion—of its resources and its representatives' efforts for a significant period of time (both in absolute terms and relative to its entire period of existence).

We conceptually agree with the notion that over the course of an organization's lifetime, it may have several purposes and its activities and expenditures may change focus, and, therefore, to subject it to disclosure and reporting requirements based on only one of several purposes at a single point in time could be unfair. *See League of Women Voters*, 23 P.3d at 1273–74. But when, as here,

an organization is created at the same time the ballot issue is conceived of, is operated and represented by individuals otherwise intimately involved in drafting and promoting the ballot issue individually and through other organizations, spends its entire first year promoting the ballot issue to the exclusion of almost all other activities, and spends three-fourths of all of the funds it has ever expended promoting that ballot issue, the conclusion is inescapable that the organization has "a major purpose" of supporting the ballot issue.

### III. Constitutionality of Article XVIII, Subsection 2(10)(a)(I)

 PCJ contends that the phrase "a major purpose" in article XXVIII, subsection 2(10)(a)(I) is unconstitutionally vague and overbroad on its face. PCJ has raised these constitutional challenges for the first time on appeal. However, because an administrative agency lacks the authority to decide facial constitutional challenges, PCJ could not have raised them before the ALJ. *See Horrell v. Dep't of Admin.,* 861 P.2d 1194, 1198 (Colo. 1993) (an administrative agency lacks authority to determine the constitutionality of a statute on its face); *Alliance for Colorado's Families v. Gilbert,* 172 P.3d 964, 972 (Colo. App.2007) (same); *Colorado Dep't of Public Health & Env't v. Bethell,* 60 P.3d 779, 785 (Colo.App.2002) (same). Therefore, we address them because we have concluded that PCJ's activities demonstrate that it had a major purpose of supporting the initiative. *See Colorado Comp. Ins. Auth. v. Indus. Claim Appeals Office,* 907 P.2d 676, 678 (Colo.App.1995) (constitutional challenges to the facial validity of statutes need not be raised in administrative proceedings in order to be asserted on appeal).

In *Independence Institute,* a division of this court addressed and rejected constitutional challenges to article XXVIII, subsection 2(10)(a)(I) identical to those asserted here by PCJ. We see no reason to disagree with the *Independence Institute* division's reasoning. Therefore, we reject PCJ's contentions that the phrase "a major purpose" in article XXVIII, subsection 2(10)(a)(I) is unconstitutionally vague and overbroad.

### IV. Conclusion

We conclude that PCJ had "a major purpose" of supporting Initiative 2007–2008 # 41. Therefore, we reverse the ALJ's order. We remand the case for further findings on whether PCJ is an "issue committee" under article XXVIII, subsection 2(10)(a), and if necessary, for the imposition of appropriate penalties if the ALJ determines that PCJ was an issue committee and failed to comply with the Act's registration and reporting requirements.

The order is reversed and the case is remanded for further proceedings consistent with this opinion.

Judge ROMÁN and Justice ROVIRA * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.