The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

**2018COA16**

**No. 16CA1522, Campaign Integrity Watchdog, LLC v. Colorado Citizens Protecting our Constitution — Election Law — Campaign Finance — Major Purpose Test**

A division of the court of appeals considers whether an administrative law judge properly applied the "major purpose" test described in *Buckley v. Valeo*, 424 U.S. 1, 79 (1976), and *Colorado Right to Life Committee, Inc. v. Coffman*, 498 F.3d 1137 (10th Cir. 2007), to determine whether an organization qualified as a political committee. The division concludes that (1) the major purpose test applied to this case; and (2) the record supported the administrative law judge's determination that the organization was not a political committee because, based on the amount of its spending on political advocacy for candidates, it did not have the major purpose of nominating or electing candidates.

The division also concludes that the administrative law judge did not err when he (1) evaluated a consecutive twelve-month period, instead of a calendar year period, in considering the organization's spending for political advocacy for candidates; and (2) excluded expenditures from his analysis that the organization did not make within the consecutive twelve-month period.

The division therefore affirms the administrative law judge's order.

COLORADO COURT OF APPEALS                    **2018COA16**

Court of Appeals No. 16CA1522
Colorado Office of Administrative Courts No. 0S2016-0005

Campaign Integrity Watchdog, LLC,

Petitioner-Appellant,

v.

Colorado Citizens Protecting our Constitution,

Respondent-Appellee,

and

Colorado Secretary of State,

Intervenor-Appellee.

ORDER AFFIRMED

Division VII
Opinion by JUDGE BERNARD
Berger and Freyre, JJ., concur

Announced February 8, 2018

Matthew Arnold, Authorized Representative, Denver, Colorado, of Campaign
Integrity Watchdog, LLC

Holland & Hart LLP, Douglas L. Abbott, Denver, Colorado, for Respondent-
Appellee

Cynthia H. Coffman, Attorney General, Matthew D. Grove, Assistant Solicitor
General, Denver, Colorado, for Intervenor-Appellee

¶ 1     This appeal asks us to review the decision of an administrative law judge who employed the "major purpose test," which the United States Supreme Court first set forth in *Buckley v. Valeo*, 424 U.S. 1, 79 (1976), to determine whether an organization was a political committee.  We conclude that the record supports the judge's holding that the organization was not a political committee because it did not have the major purpose of nominating or electing candidates.

¶ 2     The organization in question was Colorado Citizens Protecting our Constitution, which we shall call "Colorado Citizens."  Campaign Integrity Watchdog, LLC, which we shall call "Campaign Integrity," filed a complaint against Colorado Citizens, alleging that it had not registered as a political committee when it should have.  The judge dismissed the complaint.  Campaign Integrity appeals.  We affirm.

## I.     Background

¶ 3     Between September and November 2015, Colorado Citizens paid for a radio advertisement that supported the candidacy of Bob Gardner for state senate.  The advertisement stated as follows:

1

He's a conservative leader who's served our community and our country his entire life. Now he's running to represent Colorado Springs in the state senate. Bob Gardner. As a young cadet at the Air Force Academy, he learned the true meaning of leadership. Then Bob Gardner fought for school choice as a founder of Cheyenne Mountain Charter Academy. And as a state legislator, Bob Gardner stood up against trial lawyers, teachers' unions, and big spending politicians, earning him multiple legislator of the year awards. Now Bob Gardner is running for state senate. To make sure our veterans get the care they deserve. To fight for our rights on guns, school choice, and health care. And to take on the big spenders in both parties. A fiscal hawk with the unflinching guts to stand up for what's right. Bob Gardner. Paid for by Colorado Citizens Protecting our Constitution.

¶ 4    The advertisement ran on one or more radio stations in Colorado Springs from September through November 2015.

¶ 5    Following the advertisement's airing, Campaign Integrity filed a complaint with the Colorado Secretary of State. It alleged that Colorado Citizens had not registered as a political committee, as required by article XXVIII of the Colorado Constitution and the Fair Campaign Practices Act, sections 1-45-101 to -118, C.R.S. 2017. The Secretary's office referred the case to the Office of

2

Administrative Courts, which assigned an administrative law judge to preside over it.

¶ 6 The Secretary moved to intervene in the proceedings. The judge granted the motion in part, noting that the Secretary would be allowed to intervene only to "submit[] an amicus-style brief addressing the legal issues relevant in the complaint."

¶ 7 Both Colorado Citizens and the Secretary moved for summary judgment. Relying on *Colorado Right to Life Committee, Inc. v. Coffman*, 498 F.3d 1137 (10th Cir. 2007), and *Alliance for Colorado's Families v. Gilbert*, 172 P.3d 964 (Colo. App. 2007), Colorado Citizens contended that it was not a political committee because it did not have the "major purpose" of supporting or opposing candidates. The Secretary supported that contention, but it added that Colorado Citizens could not be a political committee because it did not make or receive contributions. Because of the Secretary's limited party status, the judge construed the motion as a legal brief supporting Colorado Citizens' position. The judge denied both summary judgment motions.

¶ 8 The judge then held a hearing on the merits to determine Colorado Citizens' major purpose. He found that, based on the

3

financial information admitted into evidence, Colorado Citizens' spending on political candidates only accounted for little more than one-third of its total spending, while the majority of its spending involved political issues. So he concluded that Colorado Citizens was not a political committee because it did not have the major purpose of nominating or electing political candidates.

## II. Standard of Review and General Legal Principles

¶ 9 We will uphold the decision of an administrative law judge unless his or her decision is arbitrary, capricious, unsupported by the evidence, or contrary to law. *See Sherritt v. Rocky Mountain Fire Dist.*, 205 P.3d 544, 545 (Colo. App. 2009). "[W]e accept [a judge's] factual findings unless they are clearly erroneous or unsupported by evidence in the record." *Colo. Educ. Ass'n v. Rutt,* 184 P.3d 65, 77 (Colo. 2008). But whether the judge applied the correct legal standard is a question of law that we review de novo. *See Cerbo v. Protect Colo. Jobs, Inc.*, 240 P.3d 495, 500-01 (Colo. App. 2010); *see also Stamm v. City & Cty. of Denver*, 856 P.2d 54, 57 (Colo. App. 1993)(noting that "[a] reviewing court is required to set aside the final orders of an administrative agency if the agency applied an erroneous legal standard").

¶ 10    In an administrative hearing, evidence is admissible if it "possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs." *Colo. Motor Vehicle Dealer Licensing Bd. v. Northglenn Dodge, Inc.*, 972 P.2d 707, 713 (Colo. App. 1998).  But a judge "has discretion to determine the relevancy of evidence." *Aviado v. Indus. Claim Appeals Office*, 228 P.3d 177, 179 (Colo. App. 2009).  "Evidentiary decisions are firmly within a[] [judge's] discretion . . . and will not be disturbed absent a showing of abuse of that discretion." *Youngs v. Indus. Claim Appeals Office*, 2013 COA 54, ¶ 40.  "An abuse of discretion occurs when the [judge's] order is beyond the bounds of reason, as where it is unsupported by the evidence or contrary to law." *Heinicke v. Indus. Claim Appeals Office*, 197 P.3d 220, 222 (Colo. App. 2008).

### III.    "The Major Purpose" Test

¶ 11    Campaign Integrity contends that the judge erred when he held that Colorado Citizens was not a political committee.  The error arose, this contention continues, from the judge's misapplication of the major purpose test.  We disagree.

## A. Additional Background

¶ 12 The judge's decision applied the major purpose test that the United States Supreme Court set forth in *Buckley*, 424 U.S. at 79. He determined that, "although the major purpose test is not expressly included within Article XXVIII's definition of political committee, [he could not] constitutionally apply that definition to [Colorado Citizens] unless the evidence proves that [Colorado Citizens'] major purpose was to support or oppose one or more political candidates."

¶ 13 The judge analyzed the major purpose issue from two perspectives. First, he looked at Colorado Citizens' "statement of organizational purpose." He found that this statement did not mention political advocacy, but "political advocacy in one form or another is all [that Colorado Citizens] did over the one-year period under study." So he "attache[d] little weight to [its] statement of organizational purpose."

¶ 14 The judge then looked at Colorado Citizens' financial records. He found that spending on candidates for a year beginning in 2015 and ending in 2016 accounted for only 33.5 percent of its total spending. Because more than half of Colorado Citizens' spending

6

went to something other than candidates, he found that it was not a political committee.

¶ 15    Section 2(12)(a) of article XXVIII of the Colorado Constitution defines a "[p]olitical committee" as "any person, other than a natural person, or any group of two or more persons, including natural persons that have accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates."

¶ 16    In interpreting similar language under federal campaign law, the United State Supreme Court held that, to qualify as a political committee, the organization must either (1) be "under the control of a candidate"; or (2) have "the major purpose of which is the nomination or election of a candidate" to qualify as a political committee. *Buckley*, 424 U.S. at 79. Because there is no evidence in this case that Colorado Citizens was controlled by any candidate, including Mr. Gardner, we are only concerned with the second consideration, which is known as the "major purpose test." *See Alliance for Colorado's Families*, 172 P.3d at 970. (The Supreme Court adopted the major purpose test to avoid "serious problems of

7

vagueness" that might have "deter[red] those who [sought] to exercise protected First Amendment rights." *Buckley*, 424 U.S. at 76-77.)

¶ 17    As far as political committees are concerned, the major purpose test does not appear in either Colorado's Constitution or in any Colorado statute.  But the Tenth Circuit, when analyzing the definition of political committee in our state constitution, held that it would be unconstitutional as applied if it did not incorporate the major purpose test.  *Colo. Right to Life Comm., Inc.*, 498 F.3d at 1154.  In incorporating the major purpose test, the Tenth Circuit provided further guidance on how to apply it.  Relying on *Federal Election Commission v. Massachusetts Citizens for Life*, 479 U.S. 238, 252 (1986), the circuit stated that there were two ways to determine an organization's major purpose.  *Colo. Right to Life Comm., Inc.*, 498 F.3d at 1152.  First, a court could examine its "central organizational purpose."  *Id.*  Second, a court could compare "the organization's independent spending with overall spending to determine whether the preponderance of expenditures are for express advocacy or contributions to candidates."  *Id.*

¶ 18    In *Alliance for Colorado's Families*, a division of this court decided that the major purpose test from *Buckley*, as augmented by *Colorado Right to Life Committee, Inc.*, was the proper test to apply when analyzing whether an organization was a political committee. (The division did not reach a definitive conclusion about whether the major purpose test had been satisfied because the administrative law judge had not made sufficient factual findings. 172 P.3d at 972.  So the division remanded the case for "further proceedings . . . guided by *Colorado Right to Life Committee, Inc.* . . . and other relevant authority."  *Id.* at 973.)

## C.    Analysis

¶ 19    We begin by noting that Campaign Integrity agrees that the definition of "political committee" found in Colorado's Constitution is "insufficient" because it does not incorporate *Buckley*'s major purpose test.  Campaign Integrity then asks us to "clarify the standard for applying" that test to political committees.  Based on Campaign Integrity's position, we shall proceed, as did the administrative law judge, to decide this case employing the major purpose test.

¶ 20    Campaign Integrity contends that the judge in this case should have applied the statutory major purpose definition from section 1-45-103(12)(b), C.R.S. 2017, which defines "issue committee," to Colorado Citizens' conduct.  It reasons that (1) because the great extent of Colorado Citizens' written and broadcast communications supported a candidate, it was a political committee, *see* § 1-45-103(12)(b)(II)(B); (2) the judge erred because he did not consider whether Colorado Citizens' support of Mr. Gardner constituted a "considerable portion" of its total activities, *see* § 1-45-103(12)(b)(II)(A); *see also Cerbo*, 240 P.3d at 501; and (3) the judge did not consider Colorado Citizens' "demonstrated pattern of conduct," *see* § 1-45-103(12)(b)(II).  We disagree with these contentions for several somewhat interconnected reasons.

¶ 21    First, the phrase "major purpose" does not appear in the definition of political committee found in section 2(12)(a) of article XXVIII.  As we have explained above, *Colorado Right to Life Committee, Inc.*, held that this definition would be unconstitutional without the major purpose test, and *Alliance for Colorado's Families* followed *Colorado Right to Life Committee, Inc.*  We are persuaded by the reasoning in *Alliance for Colorado's Families*.  So we, too, will

10

follow *Colorado Right to Life Committee, Inc.*, and we will apply the major purpose test in this case as augmented by the alternative factors described in *Colorado Right to Life Committee, Inc.*

¶ 22      Second, we reject Campaign Integrity's contention that we should apply part of the definition of an "issue committee" to determine whether Colorado Citizens was a political committee, which is, as we have observed above, defined by a different constitutional subsection.  Unlike the definition of political committee, the definition of "issue committee" in article 28, section 2(10)(a)(I), *includes* a reference to the issue committee's major purpose: "any person . . . [t]hat has a major purpose of supporting or opposing any ballot issue or ballot question."  The term "major purpose" as used in that definition is further defined in section 1-45-103(12)(b).  That section states that an organization's major purpose can be determined by

>    (I) An organization's specifically identified *objectives in its organizational documents* at the time it is established or as such documents are later amended; or

>    (II) An organization's *demonstrated pattern of conduct* based upon its:

11

(A) *Annual expenditures* in support of or opposition to a ballot issue or ballot question; or

(B) Production or funding, or both, of *written or broadcast communications*, or both, in support of or opposition to a ballot issue or ballot question.

(Emphasis added.)

¶ 23 But, as we have suggested above, Campaign Integrity's contention contemplates apples when we must discuss oranges. A "major purpose," as defined in section 1-45-103(12)(b), only applies to issue committees. And it ignores the importance of the legislature's choice to include a definition of "major purpose" for issue committees but to exclude such a definition for political committees. *See* § 1-45-103(14)(defining political committee); *Colo. Right to Life Comm., Inc.,* 498 F.3d at 1155 ("The inclusion of the 'major purpose' test in § 2(10)(a) indicates that the decision *not* to include this requirement in the definition of political committee was deliberate and consistent with the state's citizenry's intent."). Because issue committees and political committees are mutually exclusive, *see* Colo. Const. art. XXVIII, § 2(10)(b)(stating that issue committees do not include political committees), this legislative

choice makes clear that the definition of "major purpose" cannot apply to both types of committees, *see Turbyne v. People*, 151 P.3d 563, 567-68 (Colo. 2007)("We do not add words to [a] statute . . . . [W]e cannot supply . . . missing language . . . .").

¶ 24    Campaign Integrity's contention is further undercut by the language of the statutory definition of "major purpose" because section 1-45-103(12)(b) refers to *a* major purpose of an organization, not to *the* major purpose. *See Cerbo*, 240 P.3d at 501 ("[B]y using the indefinite article 'a,' the phrase 'a major purpose' brings within its ambit organizations for which promoting a ballot issue is but one major purpose." (citing *Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969))). Although, under this statute, an issue committee could have more than one major purpose, the United States Supreme Court made clear in *Buckley* that a political committee can have only one. *See Indep. Inst. v. Coffman*, 209 P.3d 1130, 1137 (Colo. App. 2008)(noting that *Buckley*'s major purpose test determines the "one, central purpose for which [a political committee] is created").

¶ 25    Third, we think that Campaign Integrity's reliance on *Colorado Ethics Watch v. Gessler*, 2013 COA 172M, is misplaced. In that

13

case, a division of this court struck down the Secretary's rule codifying the major purpose test. *Id.* at ¶ 38. But, unlike in this case, the division's analysis focused on a question of administrative law: Has the legislature, either explicitly or implicitly, delegated the authority to an administrative agency to fill a gap in a statute? *Id.* at ¶ 22. The division's analysis therefore did not touch upon whether the major purpose test, as described in *Colorado Right to Life Committee, Inc.*, and *Alliance for Colorado's Families*, should apply to political committees in this case.

¶ 26     Fourth, Campaign Integrity asserts that *Colorado Ethics Watch* required the judge to evaluate the major purpose test in terms of whether Colorado Citizens "demonstrated [a] pattern of conduct reflected in its annual activity and production and/or funding of communications." But this demonstrated pattern of conduct test comes directly from section 1-45-103(12)(b), the statute defining "major purpose" for issue committees. And, as we have already twice observed, this statutory test is inapplicable to this case. *Colorado Ethics Watch* did not suggest otherwise.

¶ 27     We therefore conclude that the judge properly applied the major purpose test as described in *Colorado Right to Life Committee, Inc.,* and *Alliance for Colorado's Families.*

¶ 28     We further conclude that the judge's factual findings supported his conclusion that Colorado Citizens was not a political committee.  The judge considered the alternatives of the major purpose test.  Our review of the record leads us to agree with him that Colorado Citizens' statement of its organizational purpose was unhelpful because the statement and Colorado Citizens' actual activities were inconsistent.  For example, the statement of purpose referred to "educational outreach regarding the strengthening of public education," but it did not mention political activity or political advocacy.  But, after reviewing records from Colorado Citizens, the judge found that it had engaged in political advocacy for a year, although most of the advocacy was on behalf of issues, not candidates.

¶ 29     And we therefore agree with the judge that employing the second test from *Colorado Right to Life Committee, Inc.* — analyzing Colorado Citizens' spending activity — was the appropriate method of inquiry.  In doing so, as we will describe in more detail below, the

judge gave Campaign Integrity the benefit of the doubt when analyzing Colorado Citizens' spending activity. For example, he treated unexplained spending in Colorado Citizens' records as spending on political advocacy for candidates. Yet, even giving Campaign Integrity that benefit, the records merely showed that a little over one-third of Colorado Citizens' spending was on political advocacy for candidates. We therefore conclude that the record established that Colorado Citizens was not a political committee because its major purpose — its "one, central purpose," *Indep. Inst.*, 209 P.3d at 1137 — was not supporting candidates.

## IV. Calendar Year Versus Consecutive Twelve Months

¶ 30 When applying the major purpose test, Campaign Integrity contends that the judge should have considered Colorado Citizens' spending in a calendar year, instead of in a consecutive twelve-month period from June 2015 to May 2016. We disagree.

### A. Additional Background

¶ 31 Campaign Integrity subpoenaed financial records from Colorado Citizens from July 1, 2015, through April 1, 2016. In response, Colorado Citizens produced bank statements from June 2015 to April 2016. Colorado Citizens also produced a profit and

16

loss summary showing expenses from July 2015 to May 2016. Finally, Colorado Citizens produced several invoices.

¶ 32    The parties stipulated to admit these documents. But some of them did not provide the judge with information about the purpose of some of the expenditures. So, as we observed above, the judge sanctioned Colorado Citizens by deciding that it would treat all unexplained expenditures as spending on political advocacy for candidates. The judge then analyzed Colorado Citizens' contributions from June 2015 to May 2016, and, based on the submitted records, he decided that Colorado Citizens' contributions to candidates constituted only slightly more than a third of its overall expenditures.

¶ 33    Although Campaign Integrity did not subpoena documents from the first half of 2015, it later told the judge that, for the purposes of the major purpose test, he had to analyze Colorado Citizens' expenditures for the calendar year of 2015. It added that, if the judge had done so, he would have decided that Colorado Citizens had been a political committee in 2015.

## B.  Law and Analysis

¶ 34    We conclude, for the following reasons, that the judge did not err when he decided to base the major purpose analysis on the records of Colorado Citizens' expenses in the consecutive twelve-month period spanning 2015 and 2016.

¶ 35    First, Campaign Integrity undercut its contention because it did not provide sufficient documentary evidence for the judge to consider calendar years 2015 and 2016 separately.  In an administrative hearing, the burden is on an order's proponent to present sufficient evidence to support the requested order.  *See* § 24-4-105(7), C.R.S. 2017; *see also Velasquez v. Dep't of Higher Educ.*, 93 P.3d 540, 542 (Colo. App. 2003).  So Campaign Integrity had the burden to provide the judge with complete documentation from 2015 if it expected the judge to analyze the financial information on a calendar-year basis.

¶ 36    But Campaign Integrity only subpoenaed documents from the second half of 2015 and from the first three months of 2016.  It did not subpoena any records from the first half of 2015.  (As we will describe in more detail below, the judge had some information about expenditures in the first half of 2015 because Colorado

Citizens voluntarily disclosed it.) Campaign Integrity set the parameters for the judge's analysis, and it cannot now argue that the judge should have considered evidence that it did not provide. Because the time period that the judge chose included the months in which Colorado Citizens paid for and ran the advertisement at issue in the complaint, we conclude that the judge did not err when he chose the 2015-2016 time period for analysis.

¶ 37 Second, even if Campaign Integrity had provided sufficient documentary evidence, there is no legal authority requiring the judge to conduct his analysis on a calendar-year basis. Although Campaign Integrity mentions *Buckley* as a basis for this contention, it cites nothing in that case that would lead us to the same conclusion, and we have not found anything in our independent reading of that case to support that contention. And Campaign Integrity's vague reference to the Internal Revenue Code's reporting requirements is similarly unconvincing. Campaign Integrity does not cite any other cases, statutes, or constitutional provisions that support its contention, and we have not found any.

## V. Exclusion of $76,000 from March and April 2015

¶ 38    Campaign Integrity contends that the judge improperly excluded evidence that Colorado Citizens had made $76,000 in contributions to candidates during March and April of 2015. We disagree.

### A. Additional Background

¶ 39    Some evidence in the record showed that Colorado Citizens donated $76,000 in March and April of 2015 to support candidates in municipal elections in Colorado Springs. But the judge declined to consider these contributions in its analysis "because [Campaign Integrity] did not subpoena [Colorado Citizens'] financial records for those months, [so] the evidentiary record [was] incomplete as to [Colorado Citizens'] total spending in those months." In other words, although the records that the judge had before him showed that Colorado Citizens had spent $76,000 in the first half of 2015 on political advocacy for candidates, the records did *not* show whether Colorado Citizens spent additional funds on non-candidate activity.

## B.    Law and Analysis

¶ 40    We conclude, for the following reasons, that the judge did not abuse his discretion when he excluded the $76,000 from his analysis because his decision was not beyond the bounds of reason and because it was supported by the evidence.  *See Youngs*, ¶ 40; *Aviado*, 228 P.3d at 180; *Heinicke*, 197 P.3d at 222.

¶ 41    Campaign Integrity did not subpoena any records from March and April of 2015; Colorado Citizens gave those records to the court voluntarily.  The judge determined that the financial records during that period were incomplete because they did not include "any evidence regarding non-candidate spending that may have occurred in the same period."  And the judge also had no financial records from May 2015, which created a gap between the March and April records and those from the second half of 2015.

¶ 42    Finally, even if the judge had included the $76,000 in his analysis, the total candidate spending for 2015 would *still* have constituted less than fifty percent of Colorado Citizens' overall candidate-related expenditures, or less than what would constitute the one, central purpose for which Colorado Citizens was created.  *See Indep. Inst.*, 209 P.3d at 1137.

21

## VI. Secretary's Contentions

¶ 43 The Secretary urges us to affirm on an alternative basis — Colorado Citizens was not a political committee because it did not make or receive contributions — if we do not affirm the judge's order based on the major purpose test. Because we have concluded that the judge properly (1) applied the major purpose test; (2) used the year covered by the records before him instead of calendar year 2015; and (3) excluded $76,000 in Colorado Citizens' expenditures from his analysis, we decline to address the Secretary's alternative contention.

¶ 44 The order is affirmed.

JUDGE BERGER and JUDGE FREYRE concur.