2013 CO 37

**Dennis SHAW and First Horizon Home Loan Corporation, Petitioners/Cross–Respondents**

v.

**17 WEST MILL ST., LLC, a Colorado limited liability company, Respondent/Cross–Petitioner**

Supreme Court Case No. 11SC516

Supreme Court of Colorado,
En Banc.

June 24, 2013

Rehearing Denied July 1, 2013

Attorneys for Petitioner: Sweetbaum Sands Anderson PC, Alan D. Sweetbaum, Geoffrey P. Anderson, Jonathan G. Nash, Denver, Colorado

Attorney for Respondent: Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Craig A. Weinberg, Boulder, Colorado

Attorneys for Amicus Curiae Real Estate Law Section of the Colorado Bar Association, Davis Graham & Stubbs LLP, Geoffrey C. Klingsporn, Denver, Colorado, Notarianni & Notarianni, Gregory J. Notarianni, Denver, Colorado

Attorneys for Amicus Curiae Land Title Association of Colorado, The Sweetser Law Firm, P.C., Daniel A. Sweetser, Denver, Colorado

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this case, reviewing the decision of the court of appeals in *17 West Mill St., LLC v. Shaw,* 2011 WL 2321430, —— P.3d —— (Colo.App.2011),[1] we construe section 38–39–102(8), C.R.S. (2012), as requiring proof of actual fraud by a preponderance of the evidence in order to void a public trustee's release of the lien of a deed of trust pursuant to a written request. The statute provides that, "[i]f the written request to release the lien of any deed of trust is a fraudulent request, the release by the public trustee based upon such request shall be void." The trial court found that the term "fraudulent request" invokes the elements of common law fraud: a person commits fraud when (1) the person makes a false representation of a past or present fact; (2) the fact was material; (3) at the time the representation was made, the person knew the representation was false; (4) the person made the representation with the intent that another person would rely on the representation; (5) the other person relied on the representation; (6) that other person's reliance was justified; and (7) the reliance caused damages.

¶ 2 Here, the trial court found that the attorney for the borrower, Floyd Smith, purporting to act on behalf of the lender, Jonathan Robbins, negligently signed the request for release of the Robbins deed of trust as "attorney for the lender." He did so believing he was acting in Robbins' interest, based on a series of real estate transactions Smith had facilitated among the interested borrowers and lenders. Disagreeing with the trial court's negligence conclusion, the court of appeals characterized Smith's signature on the request for release of the deed of trust to be "constructive fraud"—meaning "a breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests, irrespective of the moral guilt of the perpetrator."

¶ 3 The court of appeals determined that the operative statutory term, "fraudulent request," in section 38–39–102(8) is ambiguous, and interpreted the statute to include both actual fraud and constructive fraud as a basis for voiding the public trustee's release of the deed of trust. The court of appeals concluded that Smith engaged in constructive fraud because he made two material misrepresentations in the request for release: (1) signing the release as "attorney for lender;" and (2) representing that the purpose of the deed of trust had been satisfied. In setting aside the contested release in this case based on constructive fraud, the court of appeals recognized that "this result is harsh as to bona fide purchaser Dennis Shaw," but that "he may pursue other available legal remedies."

¶ 4 We disagree with the court of appeals and agree with the trial court. The court of appeals' decision gives too little effect to a bona fide purchaser's reliance on the recording act, section 38–34–101, C.R.S. (2012), a principle of law the General Assembly intended to vindicate in adopting section 38–39–102(8). We adopt a plain meaning construction of section 38–39–102(8) and hold that this provision creates a narrow excep-

---

1. We granted certiorari to address:
    1. Whether the court of appeals erred by concluding that the General Assembly intended a release of a deed of trust by a public trustee to be void under section 38–39–102, C.R.S. (2011), where the requester committed constructive fraud in the request for the release.

tion that voids the public trustee's release of a deed of trust only when proof of actual fraud is demonstrated by a preponderance of the evidence. We agree with the trial court that actual fraud was not proven in this case. Accordingly, we reverse the judgment of the court of appeals and remand this case to that court for resolution regarding any other issues remaining in this case.

## I.

¶ 5 Jonathan Robbins, a real estate developer, was the sole member and manager of 17 West Mill St., LLC (17 West Mill). Robbins shared office space with Todd Demko, who was also involved in area real estate development. At different times, Robbins, 17 West Mill, and Demko all made loans to James Kreutzer, another local real estate developer. Kreutzer was the sole owner of Animas Investments, LLC, and Wildcat Properties, LLC.

¶ 6 This case arises from a $75,000 loan 17 West Mill made to Kreutzer and Animas Investments in March of 2006. Animas Investments signed a deed of trust to real property securing repayment of a promissory note made payable to 17 West Mill. On three separate occasions, at the request of Kreutzer, the parties exchanged collateral by substituting a different deed of trust on different real property for the original deed of trust securing the note. On two of these transactions, Robbins signed a letter drafted by and addressed to Kreutzer's attorney, Floyd Smith, authorizing the release of the original deed of trust in exchange for the new deed of trust securing the note. Smith then prepared requests for release of the deeds of trust, signed as "Floyd L. Smith as attorney for lender," and submitted the requests to the public trustee. Ultimately, as a result of these dealings, 17 West Mill's promissory note was secured by a deed of trust on real property described as "Unit 42 of Lightner Creek Village" (Unit 42).

¶ 7 In 2007, as part of a multi-million dollar refinancing deal that included the sale of Unit 42 to Dennis Shaw, Kreutzer sought out Robbins to release 17 West Mill's deed of trust on Unit 42. Smith drew up a letter for Robbins to sign, as he had in previous situations, authorizing the release of the deed of trust in exchange for a deed of trust on other real property. Robbins, however, was in Honduras and unable to physically sign the letter. Working under time-pressure to facilitate the deal, Smith did not attempt to contact Robbins, although Robbins was reachable by phone, and asked Demko to sign the letter on behalf of Robbins authorizing the release of the deed of trust. Demko explained that he did not have power of attorney to sign for Robbins on this particular transaction, but Smith persuaded him that he could authorize the release based on past course of conduct between him and Robbins where Demko did have power of attorney.[2] Demko signed the letter "Johann Robbins by Todd Demko," and Smith then filed a request with the public trustee to release the deed of trust on Unit 42. As he had in previous instances, Smith signed the request for release as "attorney for the lender," 17 West Mill, and asserted that the indebtedness secured by the deed of trust had been paid and/or the purpose of the deed of trust had been fully satisfied.

¶ 8 The closing occurred and Shaw obtained title to Unit 42 and then executed a deed of trust to First Horizon Home Loan Corporation, his lender. Nearly nine months later, Robbins sent a letter to Kreutzer inquiring why he had not received any payments on the loan. Robbins then learned, for the first time, that the deed of trust on Unit 42 had been released.

¶ 9 Robbins and 17 West Mill filed suit, alleging claims for negligence, civil conspiracy, and breach of fiduciary duty against Smith, as well as several other claims against Shaw, Kreutzer, the public trustee, First Horizon, and Animas Investments. Robbins requested an equitable lien on Unit 42 and a declaratory judgment that the release of the Unit 42 deed of trust was void.

---

**2.** The record suggests that, in the weeks prior to Robbins' trip, Robbins and Demko discussed the possibility that Kreutzer may want to swap deeds of trust, including Unit 42. Demko claims that Robbins said that he would probably do so, as he expressed worry that Kreutzer was having trouble making payments on the loan, and to get in touch with him in Honduras if Demko needed to.

¶ 10 In the trial court, Robbins argued that the release of the deed of trust was void because he did not personally authorize the release and it was obtained fraudulently. Robbins claimed, more broadly, that an unauthorized request for a release of a deed of trust renders the release void under the common law. The trial court, however, found that section 38–39–102(8) and its predecessors, which created the race–notice recording act, replaced the common law in this area. It determined that the language of section 38–39–102(8) provided for voiding a public trustee's release of a deed of trust only if the person seeking to void the release proved the elements of common law fraud. The court concluded that, while Smith was negligent, he did not commit actual fraud within the meaning of this provision.

¶ 11 The court of appeals reversed the trial court, concluding that section 38–39–102(8) required only "something akin to constructive fraud" in order to void the public trustee's release of the deed of trust. The court of appeals voided the release, restored the Unit 42 deed of trust to Robbins, and left Shaw to pursue other remedies, despite his undisputed position as a bona fide purchaser in reliance on the documents recorded under the recording act.[3] Shaw, First Horizon, and amici The Real Estate Law Section of the Colorado Bar Association and the Land Title Association of Colorado, argue that section 38–39–102(8) codifies a narrow exception to the rule protecting bona fide purchasers embodied in our recording act, section 38–34–101. To qualify for this exception voiding the public trustee's release of a deed of trust, they argue one must prove the elements of common law fraud in order to establish the existence of a fraudulent request to the public trustee for release of the deed of trust. We agree.

**II.**

¶ 12 We adopt a plain meaning construction of section 38–39–102(8) and hold that this provision creates a narrow exception that voids the public trustee's release of a deed of trust only when proof of actual fraud is demonstrated by a preponderance of the evidence.

### A. Standard of Review

¶ 13 Interpretation of a statute is a question of law we review de novo. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991). Our fundamental responsibility in construing a statute is to ascertain and give effect to the purpose and intent of the General Assembly in enacting it. *Alvarado v. People*, 132 P.3d 1205, 1207 (Colo.2006). In doing so, we read applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts. *People in Interest of W.P.*, 2013 CO 11, ¶ 11, 295 P.3d 514, 519. We look to the plain meaning of the language the General Assembly employed and give it effect if possible. *Id.* If the plain meaning is clear, there is no need to resort to interpretive rules and statutory construction. *Westminster v. Dogan Const. Co, Inc.*, 930 P.2d 585, 590 (Colo.1997). When interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. *W.P.*, 295 P.3d at 519.

### B. Section 38–39–102(8), C.R.S.

¶ 14 Section 38–39–102(8) voids a public trustee's release of a deed of trust only when based upon a "fraudulent request."[4] "Fraudulent" is defined as "belonging to or characterized by fraud," or, "founded on fraud." *Webster's Third New Int'l Dictionary* 904 (1971). The plain meaning instructs us that actual fraud is required for an act to be "fraudulent." *See Colo. Motor Vehicle Dealer Bd. v. Butterfield*, 9 P.3d 1148,

---

**3.** The trial court's ruling is premised on Shaw being a bona fide purchaser relying on the documents of record under the recording act. At trial, Shaw testified that he purchased Unit 42 at market value in an arms-length transaction with the seller and did not know of the history of the deed swaps between Kreutzer and Robbins. The court of appeals did not dispute Shaw's status, noting their holding was "harsh as to the bona fide purchaser Dennis Shaw...."

**4.** The provision states, "[i]f the written request to release the lien of any deed of trust is a fraudulent request, the release by the public trustee based upon such request shall be void." § 38–39–102(8).

1152 (Colo.App.2000) (concluding the plain meaning of "fraudulent" and "defrauding" in automobile license revocation statute requires proof of common law fraud). Our case law further illuminates that the General Assembly intended to codify a showing of the elements of common law fraud[5] and not something less, such as constructive fraud or negligence. In *Upson v. Goodland State Bank & Trust Company (Upson II)*, 823 P.2d 704, 706 (Colo.1992), we reasoned that, just as a deed attained through fraud is invalid and cannot transfer title, a release of a deed of trust obtained through a fraudulent request is invalid. *Upson II* involved a fraudulent promissory note marked "paid in full" and a forged request to release the deed of trust. *Id.* Both are examples of actual fraud that procured the public trustee's release of the deed of trust. We viewed the fraudulent promissory note marked "paid in full" and the forged request for a release as part of a fraudulent scheme rendering the public trustee without authority to release the deed of trust. *Id.* at 705. Our decision in *Upson II* is limited to actual fraud and contains no suggestion that constructive fraud can void the public trustee's release of a deed of trust in reliance on a written request for release.

¶ 15 Enacted by the General Assembly shortly after our decision in *Upson II*, section 38–39–102(8) codifies our decision in that case. The statute provides for a narrow exception for voiding a deed of trust based on actual fraud, in order to protect innocent persons from losing their property rights, while also furthering the purposes of Colorado's recording act, section 38–34–101, which is the "linchpin of Colorado real estate law." *Joondeph v. Hicks*, 235 P.3d 303, 306 (Colo. 2010) (citing *Premier Bank v. Bd. of Cnty. Comm'rs*, 214 P.3d 574, 579 (Colo.App.2009)). The recording act creates certainty and predictability to bona fide purchasers by allowing them to examine the recorded chain of title to determine exactly what they are purchasing. *Id.* Subsection 38–39–102(8) up-

holds the purpose of the recording act: to protect prospective and bona fide purchasers by

> render[ing] titles to real property and every interest therein more secure and marketable ... [by] liberally [construing laws affecting title to real property] with the end in view of rendering such titles absolute and free from technical defects so that subsequent purchasers and encumbrancers by way of mortgage, judgment, or otherwise may rely on the record title and so that the record title of the party in possession is sustained and not defeated by technical or strict constructions.

§ 38–34–101; *see In re Rivera*, 2012 CO 43, ¶ 16, 2012 WL 1994873 (stating the "purpose of recording ... is to provide notice to prospective purchasers of encumbrances on title, and to protect certainty and marketability of title to real property"); *Hicks v. Londre*, 125 P.3d 452, 455 (Colo.2005) (declaring the act is "intended to make titles to and interests in real property more secure and marketable ... [and] to protect subsequent purchasers from secret prior interests").

¶ 16 In contrast, the court of appeals' importation of constructive fraud as a basis for voiding releases of deeds of trust would erode reliance on recorded instruments and foster litigation, and significantly undercut protection of bona fide purchasers. Our plain meaning construction of the statute requiring proof of actual fraud is reinforced by the timetable of the legislature's enactment of the provision. In 1992, through Senate Bill 92–43, the General Assembly adopted the current language of section 38–39–102(8) to codify our holding in *Upson II*. In support of the bill, the Real Estate Law Section of the Colorado Bar Association testified that the court of appeals' decision in *Upson v. Goodland State Bank & Trust Company (Upson I)*, 797 P.2d 845 (Colo.App.1990), incorrectly placed the burden on the public trustee to ensure that all signatures on requests for

---

**5.** Common law fraud has the following elements: one made a false representation of a material fact; the party knew such a representation was false; the party who the representation was made to did not know of its falsity, and; the

representation was made with an intent that it be acted upon, and results in damages. *Brody v. Bock*, 897 P.2d 769, 775–76 (Colo.1995) (describing elements of common law fraud).

releases of deeds of trust were properly executed:

> In 1991, the court of appeals entered a decision in *Upson v. Goodland State Bank* relating to the execution by the public trustee of a release of a deed of trust, which was executed and recorded by the public trustee based upon a fraudulent request for release. The facts of that case are a bit too complicated to go into, but the court of appeals decision in, I believe it was the summer of 1991, placed the public trustee in the position, unenviable position, of having to make sure that when a request for a release of deed of trust was tendered, along with the original note, that the signature on that request was indeed proper, and the court of appeals' decision when it came down a year ago created great consternation among all of the public trustees in the state. The bar association believed that public trustees are not judicial officers. They are not qualified to look at signatures. They are not empowered to conduct an investigation with regard to whom should sign requests for release, so the provision in this Bill was a legislative response to overrule the court of appeals. Approximately six weeks ago, the Supreme Court in fact did just that. They overruled the court of appeals and this Bill is now a codification of the Supreme Court's *[Upson II]* opinion that was rendered in late January, early February.

Hearing on S.B. 92–43, 1992 Leg., 58th Gen. Assemb., 2nd Reg. Sess. (statement of Mr. Horlbeck, Colorado Bar Association Real Estate Law Section, Mar. 17, 1992). The intent of the statute was to relieve public trustees of the duty the court of appeals imposed on them to inspect requests for releases of deeds of trust to make sure they were valid and could be relied upon. *Upson II*, which the provision codified, was a case involving a fraudulent promissory note marked "paid in full" and a forged request for release of the deed of trust—actions that constituted actual, not constructive, fraud. We decline to broaden the narrow exception the General Assembly fashioned. Anything less than proof of actual fraud is insufficient under section 38–39–102(8) to void a public trustee's release of a deed of trust made in reliance on the written request for the release.

## C. Application to this Case

¶ 17 We must now determine whether Shaw and First Horizon, bona fide purchasers and lenders relying on recorded instruments, prevail over Robbins and 17 West Mill whose deed of trust the public trustee released upon Smith's request as "attorney for the lender." On review, we will not upset a trial court's factual findings unless they are clearly erroneous. C.R.C.P. 52. The trial court's findings identified a series of transactions among the interested real estate developers in which Smith acted as the middle man between the borrowers and the lenders. Although he was attorney for Kreutzer, the borrower, he consummated transactions releasing and swapping deeds of trust by signing as "attorney for the lender." These transactions moved swiftly for mutual benefit of the parties involved. Because Robbins was out of the country, Smith assumed he was acting in Robbins' overall interest in requesting release of the deed of trust in this case, in light of the prior dealings. The trial court found that Smith acted negligently by not contacting Robbins and therefore did not engage in actual fraud within the meaning of section 38–39–102(8).

¶ 18 The trial court determined that Robbins and 17 West Mill did not prove by a preponderance of the evidence that Smith made a fraudulent request for release of the deed of trust. Such a showing requires proof of the elements of common law fraud, including a false representation to the public trustee that Smith knew to be false, with the intent that the public trustee would act on it. Our review of the record reveals no clearly erroneous findings of fact by the trial court. Accordingly, we uphold the trial court's finding that Smith acted negligently and not with intent to defraud. Smith's signature on the request for release of the Robbins and 17 West Mill deed of trust was not part of a fraudulent scheme intended to defraud Robbins and 17 West Mill of their property rights. Thus, the public trustee's release of the deed of trust is not void under section 38–39–102(8) and the bona fide purchasers,

Shaw and First Horizon, prevail under the recording act.

### III.

¶ 19 Accordingly, we reverse the judgment of the court of appeals and remand this case to that court to address any other issues remaining in the case.