**WINE AND SPIRITS WHOLESALERS OF COLORADO, INC., Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF REVENUE, LIQUOR ENFORCEMENT DIVISION, Defendant–Appellee.**

No. 94CA1722.

Colorado Court of Appeals, Div. III.

May 2, 1996.

Denman & Corbetta, P.C., Richard L. Corbetta, Steven H. Denman, Ted J. Trimpa, Denver, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Clifton D. Hypsher, Assistant Attorney General, Denver, for Defendant–Appellee.

Opinion by Judge ROY.

Plaintiff, Wine and Spirits Wholesalers of Colorado, Inc., appeals from a judgment of the trial court affirming the adoption by defendant, the Liquor Enforcement Division of the Colorado Department of Revenue, of a regulation prohibiting manufacturers, wholesalers, and importers of alcohol from selling alcoholic beverages to retailers below cost. We affirm.

The facts are not in dispute. Defendant, an administrative agency of the state,

adopted a rule prohibiting the sale of liquor below cost to retailers by manufacturers, wholesalers, and importers. Defendant adopted the rule pursuant to §§ 12–47–105(1)(b) and 12–47–105(2)(a), C.R.S. (1991 Repl.Vol. 5B), which grant defendant broad rulemaking powers, including prohibiting unfair practices and unfair competition; and §§ 12–47–129(3) and 12–47–129(7), C.R.S. (1991 Repl.Vol. 5B), which prohibit manufacturers and wholesalers from owning an interest in, or providing financial assistance to, retailers.

The regulation went into effect March 2, 1994, and provides in pertinent part:

Manufacturers, wholesalers and importers and their agents or employees may not attempt to control a retail licensee's product purchase selection by engaging in unfair trade practices or competition. Retailers may not solicit or accept, and manufacturers, wholesalers and importers ('suppliers') are prohibited from directly or indirectly engaging in the following unfair practices:

A. Sales of Alcoholic Beverages Below Cost.

1. No vinous or spirituous liquors may be sold by a vinous or spirituous liquor manufacturer or wholesaler to a retail licensee below the laid-in cost of said vinous and spirituous liquor products.

2. No malt liquors may be sold by a malt liquor manufacturer or wholesaler to a retail licensee below the laid-in cost of said malt liquor products.

. . . .

4. Certain sales of alcoholic beverages below cost are not designed or intended to influence or control a retailer's product purchase selection. The following exceptions to below cost product sales are therefore permitted:

a. Product lines that will be discontinued for a minimum of at least one year may be sold below cost at market value.

b. Products for use, but not for resale, by a non-profit organization or similar group, on a retailer's licensed premises, may be invoiced to a retailer at no cost.

The invoice for said products must detail the products provided and the group for whose benefit it is provided. At the conclusion of the organization's event any unused product must be returned to the manufacturer or wholesaler, or invoiced at a minimum of cost to the retailer.

. . . .

Department of Revenue Regulation No. 47–129.4A, 1 Code Colo. Reg. 203–2.

On April 1, 1994, plaintiff commenced this action in the district court seeking judicial review pursuant to § 24–4–106, C.R.S. (1988 Repl.Vol. 10A), and a declaratory judgment under C.R.C.P. 57. The trial court upheld the regulation, stating that: "[T]he agency did not act in an unconstitutional manner, did not exceed its statutory authority, and did not otherwise act in a manner contrary to statutory requirements in promulgating the regulation." The trial court further held that the agency action was reasonable and supported by evidence in the record. This appeal followed.

**I.**

Plaintiff first contends that defendant acted beyond its statutory authority because the plain meaning of the statute requires that a manufacturer or wholesaler *intend* to control a retailer when providing financial assistance by making below-cost sales. Therefore, because the regulation makes financial assistance by below-cost sales a *per se* or strict liability violation, it is contrary to the express intent of the General Assembly. We disagree with plaintiff's contention.

The General Assembly has, in § 12–47–105, expressly delegated to defendant authority to promulgate rules and regulations concerning the liquor industry.

Any rules and regulations that a state agency adopts pursuant to a statutory rulemaking proceeding are presumed valid. *Regular Route Common Carrier Conference v. Public Utilities Commission*, 761 P.2d 737 (Colo.1988). Accordingly, plaintiff has the burden of establishing their invalidity by demonstrating that the rulemaking body act-

ed in an unconstitutional manner, exceeded its statutory authority, or otherwise acted in a manner contrary to statutory requirements. Section 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A); *Amax, Inc. v. Colorado Water Quality Control Commission*, 790 P.2d 879 (Colo.App.1989).

■ A reviewing court may not substitute its judgment for that of the administrative agency. And, an agency's construction of its own governing statute is entitled to great weight. *Amax, Inc. v. Colorado Quality Control Commission, supra.*

■ In *Citizens for Free Enterprise v. Department of Revenue*, 649 P.2d 1054 (Colo. 1982), our supreme court articulated the reasoning underlying judicial review of administrative rulemaking proceedings. Explaining the "based on the record" requirement of § 24–4–106(4), C.R.S. (1988 Repl.Vol. 10A), the court held that the standard of review in the consideration of agency rulemaking is reasonableness. *See Amax, Inc. v. Colorado Water Quality Control Commission, supra.*

■ In determining the reasonableness of an agency's rulemaking, we find the reasoning of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, 702–03 (1984), particularly persuasive:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether [the legislature] has directly spoken to the precise question at issue. If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]. If, however, the court determines [the legislature] has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible con-

struction of the statute.... If [the legislature] has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*See J.R. Simplot Co. v. Idaho State Tax Commission*, 120 Idaho 849, 820 P.2d 1206 (1991) (adopting *Chevron* for review of state agency rulemaking); *Church v. State*, 164 Ill.2d 153, 207 Ill.Dec. 6, 646 N.E.2d 572 (1995) (same); *Moore v. Gencorp, Inc.*, 633 So.2d 1268 (La.1994) (same); *Columbus & Franklin County Metropolitan Park District v. Shank*, 65 Ohio St.3d 86, 600 N.E.2d 1042 (1992) (same); *Morton International, Inc. v. Auditing Division*, 814 P.2d 581 (Utah 1991) (same); *see also Henning v. Industrial Welfare Commission*, 46 Cal.3d 1262, 252 Cal. Rptr. 278, 762 P.2d 442 (1988) (Broussard, J., concurring) (adopting *Chevron* analysis).

II.

Following the *Chevron* analysis, we must first decide whether the General Assembly has spoken on the precise question concerning the illegality of below-cost sales.

Section 12–47–129(3), one of the specific statutes that defendant relied upon in banning below-cost sales, states in relevant part:

> (a) It is unlawful for any [manufacturers, wholesalers, limited winery licensees, or any persons with a financial interest in such entities] ... to furnish, supply, or loan, in any manner, directly or indirectly, to any person licensed to sell at retail pursuant to the provisions of this article any financial assistance or any equipment, fixtures, chattels, or furnishings used in the storing, handling, serving, or dispensing of food or alcoholic beverages within the premises or for making any structural alterations or improvements in or on the

building on which such premises are located....

The other statute underlying the regulation, § 12–47–129(7), states:

It is unlawful for any owner, part owner, shareholder, stockholder, or person interested, directly or indirectly, in any retail business or establishment of a person licensed to sell at retail pursuant to the provisions of this article to enter into any agreement with any person or party or to receive, possess, or accept any money, fixtures, supplies, or things of value from any person or party, whereby a person licensed to sell at retail pursuant to this article may be influenced or caused, directly or indirectly, to buy, sell, dispense, or handle the product of any manufacturer of alcoholic beverages....

■ A plain reading of these statutes demonstrates that the General Assembly did not speak to the precise question of below-cost sales. *See Dunton v. People,* 898 P.2d 571 (Colo.1995).

■ Nevertheless, plaintiff argues that § 12–47–129(9), C.R.S. (1991 Repl.Vol. 5B) injects an intent element into the unlawful acts delineated in §§ 12–47–129(1) through (7), that is, as pertinent here, financial assistance is unlawful only if it can be shown that the manufacturer or wholesaler intended to influence or control the retailer. We disagree.

Section 12–47–129(9) provides:

This section is intended to prohibit and prevent the control of the outlets for the sale of alcoholic beverages by any persons or parties other than the persons licensed pursuant to the provisions of this article.

We interpret § 12–47–129(9) in accordance with its plain meaning as a statement of legislative intent to assist the agency and the courts in construing and applying the statute in determining whether the act in question is unlawful under the broadly worded definitions of unlawful acts set forth in the preceding subsections of § 12–47–129. Section 12–47–129(9) is an admonishment that the General Assembly, in enacting the specific unlawful acts contained in §§ 12–47–129(1) through (7), intended to prohibit conduct which results in, or is likely to result in, the control of retail liquor outlets by wholesalers, manufacturers, or other licensees. There is no reference to the intent of the actor contained in, or intended by, § 12–47–129(9).

Plaintiff, however, further relies, in part, on *Majestic Marketing Co. v. Anderson Enterprises of Colorado, Inc.,* 32 Colo.App. 369, 511 P.2d 943 (1973), and *Nobel, Inc. v. Colorado Department of Revenue,* 652 P.2d 1084 (Colo.App.1982), which construed and applied the statute. We do not view either case as controlling here.

*Majestic* dealt with a public policy defense asserted by a retailer in an action by the wholesaler to collect on a short-term line of credit for the purchase of merchandise which had been reduced to a promissory note. The court rejected the public policy defense, relying on the fact that, at that time, the statute authorized the regulatory agency to issue regulations governing "sales on credit." Later, the General Assembly repealed defendant's authority to issue regulations on credit sales of alcoholic beverages and replaced it with an express prohibition against regulating such sales. *See* § 12–47–105(2)(b), C.R.S. (1991 Repl.Vol. 5B); Colo. Sess. Laws 1977, ch. 160, § 2 at 720.

*Nobel* dealt with the lease and sale on credit of restaurant equipment to a liquor retailer by an equipment dealer which also held a wholesale liquor license. The court held that there was no unlawful financial assistance absent control, or an attempt to control, the retailer.

To the extent, if any, that *Majestic Marketing Co. v. Anderson Enterprises of Colorado, Inc., supra,* and *Nobel, Inc. v. Colorado Department of Revenue, supra,* can be read as requiring intent to control or influence a retail dealer by providing financial assistance before a violation of the statute can obtain, we decline to follow them.

In our view, the General Assembly has not, either explicitly or implicitly, required that a grantor of financial assistance or credit must intend to gain influence or control over a liquor retailer before the financial assistance is unlawful. Further, we conclude that the General Assembly has not directly spoken on

the issue of below-cost sales, and under the *Chevron* analysis, we need not resort to any rules of statutory construction urged upon us by the plaintiff, including legislative acquiescence to judicial interpretation and a resort to the judicial interpretation of analogous federal statutes regulating the sale and distribution of alcoholic beverages in order to resolve the matter.

### III.

Next, we address and disagree with plaintiff's contention that the regulation is unreasonable.

 A reviewing court should display sensitivity to the range and nature of determinations that an administrative agency must make. Postulating the types of rules promulgated by an agency as lying along a continuum, our supreme court observed that, on one end of this continuum, an agency may base rules primarily upon policy considerations, with factual determinations playing a tangential role. For such rules, specific factual support is not required, although the reasoning process that led to the adoption of the rule must be defensible. *See Regular Route Common Carrier Conference v. Public Utilities Commission, supra.*

At the opposite end of the continuum, the supreme court noted, the necessity for the rule may turn upon discrete facts capable of demonstrative proof. In that situation, the reasonableness of the agency action depends upon the presence of factual support for its determination.

Between these two extremes are the numerous agency actions that involve a combination of factual determinations and policy choices. With respect to these middle regulatory actions, a court must appropriately tailor the nature and scope of judicial review depending upon which are predominant. *See Regular Route Common Carrier Conference v. Public Utilities Commission, supra.*

Here, defendant, in our view, properly based its actions primarily upon policy considerations without providing any factual support. The defendant could reject any adverse submissions by the public and adopt its rule so long as it was reasonable to do so.

We hold that, based on the statutory authority granted to it, defendant acted reasonably and within its authority in adopting the regulation. *See People v. Lowrie,* 761 P.2d 778 (Colo.1988). Section 12–47–105 grants defendant broad discretion in regulating the liquor industry. Prohibiting below-cost sales is well within defendant's authority.

Judgment affirmed.

PLANK and NEY, JJ., concur.