**MILE HIGH GREYHOUND PARK, INC., a Colorado corporation, and Racing Associates of Colorado, Ltd., a Colorado limited partnership, Plaintiffs–Appellants,**

**v.**

**COLORADO RACING COMMISSION and the Division of Racing Events of the Colorado Department of Revenue, Defendants–Appellees.**

No. 99CA0583.

Colorado Court of Appeals, Div. III.

April 27, 2000.

Certiorari Denied Oct. 30, 2000.

Holland & Hart, LLP, Jack M. Englert, Jr., Stephen G. Masciocchi, Denver, Colorado, for Plaintiffs–Appellants.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge NEY.

Plaintiffs, Mile High Greyhound Park, Inc. and Racing Associates of Colorado, Ltd., are the owners and operators of greyhound and horse racing tracks located in Colorado. They appeal from a judgment upholding a Colorado Racing Commission rule which requires race tracks to install and maintain, at their own expense, video surveillance systems in pari-mutuel wagering areas. We affirm.

In May 1998, the Commission, upon the recommendation of the Division of Racing Events, adopted a rule requiring all race tracks and related simulcast facilities to install video surveillance systems in pari-mutuel areas to monitor lines, cashier and seller windows, and money/accounting rooms, at the race tracks' expense. The Commission was to be responsible for the costs of the equipment needed to review, audit, and duplicate the recordings made by the surveillance systems.

Plaintiffs' license applications for the 1998 season were accepted by the Commission, conditioned on plaintiffs' installation of video surveillance systems at their respective race tracks at their own expense.

Pursuant to § 24–4–106, C.R.S.1999, plaintiffs sought review of this administrative action. They requested a declaratory judgment that the portion of the rule requiring the race tracks to pay for the installation and maintenance of the surveillance systems was contrary to the statute that enables the Commission to license and regulate pari-mutuel wagering at race tracks. Plaintiffs also sought injunctive relief, attorney fees, and expenses.

By deferring to the Commission's "reasonable" interpretation of its enabling statute, the trial court ruled that imposition of such a requirement was proper under § 12–60–501(1)(a), C.R.S.1999. This appeal followed.

Plaintiffs contend that placing the burden of the cost of installing and maintain-

ing the surveillance systems on them exceeds the Commission's statutory authority as provided in §§ 12–60–501(2)(a) & (4), C.R.S. 1999, which mandates that the costs of *regulation* of pari-mutuel wagering are the Commission's responsibility. We disagree.

Plaintiffs have sought judicial review of the Commission's rulemaking authority, in contrast to an administrative adjudication or quasi-judicial determination. *See Colorado Ground Water Commission v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 217 (Colo.1996)(defining rulemaking as "the issuance of regulations or the making of determinations which are addressed to indicated but unnamed or unspecified persons or situations").

■ Since agency rules are presumed valid, plaintiffs have the burden of establishing their invalidity by demonstrating that the rulemaking body exceeded its statutory authority. *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue,* 919 P.2d 894 (Colo.App.1996). An agency's construction of its own governing statute is entitled to great weight. *Amax, Inc. v. Colorado Water Quality Control Commission,* 790 P.2d 879 (Colo.App.1989).

The Colorado Racing Act empowers the Commission to license and regulate pari-mutuel wagering at race tracks. Section 12–60–501(2)(a) provides, in pertinent part, that:

[T]he commission shall, at its own expense, regulate the operations of pari-mutuel machines and equipment, the operations of all money rooms, accounting rooms, and sellers' and cashiers' windows, and the weighing of jockeys and of greyhounds ....

Additionally, § 12–60–501(4) provides that:

The commission shall, at its own expense, specifically regulate the operation by in-state simulcast facilities of pari-mutuel machines and equipment, the operation of all money and accounting facilities, and the operation of sellers' and cashiers' windows ....

Plaintiffs argue that the language of these two sections of the statute plainly states the legislative intent that the Commission bear the costs of installing and maintaining the surveillance systems because the undisputed

purpose of the surveillance cameras is regulation of the wagering process.

The Commission maintains that the licensure requirement at issue here is authorized by § 12–60–501(1)(a), which provides that all race tracks engaged in pari-mutuel wagering "be constructed, maintained, and operated in accordance with the laws of this state and the rules of the commission." Accordingly, the Commission argues that race track equipment, maintenance, and operation costs— such as the installation and maintenance of the surveillance system—are to be borne by the race tracks. In contrast, it acknowledges that the costs associated with the equipment required to review, audit, and duplicate the recordings made by the surveillance systems are the Commission's responsibility.

A court reviewing an interpretation of a statute by an agency must engage in a two-part test. *See Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue, supra* (adopting the analysis of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ The court first must determine if the legislature has directly spoken to the precise question at issue. If the intent is clearly articulated in the statute, the court is required to give effect to such unambiguously expressed intent. *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue, supra.*

Here, the applicable statutory language does not speak to the precise issue. The two statutes fail to address directly the delineation between the expenses to be borne by the race tracks as construction, maintenance, and operation costs, and those expenses that are to be borne by the Commission as regulation costs.

■ If the statute is silent or ambiguous with respect to the specific issue, the inquiry becomes whether the agency's interpretation is based on a permissible construction of the statute. When the statute is implicitly silent as to the issue to be determined, "a court may not substitute its own construction of a statutory provision for a reasonable interpre-

tation made by the administrator of an agency." *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue, supra,* 919 P.2d at 897.

We conclude the Commission's interpretation—that the installation of video surveillance systems is governed by § 12–60–501(1)(a)—is permissible. The construction, maintenance, or operation expenses contemplated by § 12–60–501(1)(a) could reasonably include the installation, maintenance, and operation of the equipment at issue.

In contrast, as set forth in §§ 12–60–501(2)(a) & (4), the costs of duplication, evaluation, and utilization of such information by the Commission to investigate violations or enforce its requirements, are regulatory. Such regulatory costs are to be borne by the Commission pursuant to §§ 12–60–501(2)(a) & (4).

In other words, the costs of doing business and complying with licensing rules, which includes the cost of equipment necessary for the collection of information used by the Commission to regulate, are the race tracks' responsibility under § 12–60–501(1)(a). The utilization of such information to regulate and monitor the operation of pari-mutuel wagering at race tracks must be borne by the Commission under § 12–60–501(2)(a) & (4). Hence, we conclude that this interpretation was the intent of the legislature when it distinguished regulatory costs of the Commission from the costs of operation or of doing business, which include compliance with licensing rules.

Thus, the trial court properly upheld the Commission's interpretation of the rule in concluding that it did not exceed legislative authorization as intended by the statute. *Barela v. Beye,* 916 P.2d 668 (Colo.App.1996) (a reviewing court's task is to determine statutory intent, and then assure that the administrative regulation or rule at issue is consistent).

Judgment affirmed.

Judge TAUBMAN concurs.

Judge JONES dissents.

Judge JONES dissenting.

I respectfully dissent from the majority opinion. I believe the Colorado Racing Commission (Commission) exceeded its statutory authority, as provided in § 12–60–501(2)(a) and (4), C.R.S.1999, by placing the burden of the cost of installing and maintaining a surveillance system on plaintiffs, Mile High Greyhound Park, Inc. and Racing Associates of Colorado, Ltd. I, therefore, would reverse and remand this cause for, *inter alia,* entry of a declaratory judgment establishing that the portion of the Commission's rule requiring race tracks, including plaintiffs, to pay for installation and maintenance of the subject surveillance systems was contrary to the Commission's enabling statute concerning the licensing and regulating of pari-mutuel wagering at race tracks.

That statute provides, in pertinent part, as follows:

[T]he commission shall, at its own expense, regulate the operations of pari-mutuel machines and equipment, the operations of all money rooms, accounting rooms, and sellers' and cashiers windows, and the weighing of jockeys and of greyhounds. . . .

Section 12–60–501(2)(a), C.R.S.1999.

The related statute provides:

The commission shall, at its own expense, specifically regulate the operation of in-state simulcast facilities of pari-mutuel machines and equipment, the operation of all money and accounting facilities, and the operation of sellers' and cashiers' windows. . . . For such purposes, the commission, at its own expense, and in addition to other employees, shall employ the competent personnel necessary to supervise the wagering through in-state simulcast facilities. . . .

Section 12–60–510(4), C.R.S.1999.

All parties to this appeal conceded during oral arguments that the applicable statutes are clear and unambiguous.

It is plain that certain costs for building and maintaining facilities must be borne by the race tracks, including plaintiffs here. The statutes mandate that, concerning "places where . . . race meets are held" and "all kennels and stables housing racing ani-

mals[,]" the Commission "shall require all such places to be constructed, maintained, and operated in accordance with the laws of this state and the rules of the commission." Section 12–60–501(1)(a) & (b), C.R.S.1999.

The entire statutory scheme, read *in pari materia*, therefore, requires the race tracks to incur the costs of construction, maintenance, and operation of the facilities needed to conduct horse and dog races, while the Commission must pay to regulate wagering at such facilities.

Plaintiffs have the burden of establishing the invalidity of agency rules because such rules are presumed to be valid. *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue,* 919 P.2d 894 (Colo.App.1996). Great deference must be given to an agency's construction of its own governing statute. *Amax, Inc. v. Colorado Water Quality Control Commission,* 790 P.2d 879 (Colo.App.1989). However, such agency discretion, and the concomitant deference, are not absolute, for agencies are bound "to comply strictly with their enabling statutes." They may not legislate beyond the charge given them in the statutes authorizing them to act. *Adams v. Colorado Department of Social Services,* 824 P.2d 83, 86 (Colo.App.1991). Thus, courts have a duty "to invalidate administrative regulations which conflict with the design of [an enabling] statute." *Cartwright v. State Board of Accountancy,* 796 P.2d 51, 53 (Colo.App. 1990).

### I.

First, I believe that the Commission violated the language and intent of §§ 12–60–501(2)(a) and (4) by its requirement that plaintiffs incur the costs for the video surveillance system. I further believe that the record reflects that such costs cannot appropriately be found to be designated for construction, maintenance, and operation of racing facilities. Rather, the record demonstrates that such costs are closely tied to the regulation of wagering. Any such costs are to be the expense of the Commission. Section 12–60–501(2)(a) & (4), C.R.S.1999.

Personnel of the Commission and of the Division of Racing Events of the Colorado Department of Revenue (Division) conceded that the video surveillance system was for the purpose of allowing them to "strengthen [their] regulatory oversight," to foster "maximum regulatory oversight," and to "assist in fulfilling [their] regulatory oversight." The system would "monitor transactions between teller and patron in the mutuel areas (lines, windows, money rooms)."

Most telling of all, the Commission and Division made clear that the video surveillance system would enable them to use fewer "investigative personnel," which they concede they provide to the racing venues for regulation purposes, and whom they must provide at their own expense.

A judicial finding that a system of video surveillance must be provided at plaintiffs' expense to reduce, in large measure, the number of personnel the Commission and Division require, at their own expense, to carry out their statutory duties of regulation, cannot be correct as a matter of law under any definition of "regulation." All the more so is this true because § 12–60–501(2)(a) & (4) specifically deal with the monitoring of pari-mutuel wagering machines and facilities.

I also conclude that, in imposing the requirement of payment on plaintiffs, the Commission has failed to give effect to all parts of its enabling statutes. Its construction of the statutes would eliminate any rational distinction between "regulation" and the burdens that may be imposed on racing venues. *See Gorman v. Tucker,* 961 P.2d 1126 (Colo. 1998).

### II.

Secondly, I believe the court gave inappropriate deference to the Commission's rules and, thus, allowed the commission to exceed its statutory authority and to act arbitrarily.

The enabling statute is plain in its expression that the Commission must, at its own expense, regulate cashiers' and sellers' windows. Such is precisely what the record shows the video surveillance system is to do, even to the point of the system alleviating the need for some Commission personnel

who would otherwise provide such surveillance at the Commission's expense.

Thus, here, the Commission's construction of the statute was not entitled to the court's deference. *See ABC Disposal Services v. Fortier,* 809 P.2d 1071 (Colo.App.1990) (because the construction of statues is a question of law, court not bound by agency decision that misconstrues or misapplies the law, when statute is clear in its meaning).

The trial court's findings ignore undisputed evidence that the surveillance system is in the nature of regulation, including such evidence provided candidly by the Commission and the Division. The record is replete with evidence of how the system will expand and strengthen the Commission's "regulatory oversight" in pursuance of its "fulfilling its regulatory responsibilities."

Thus, as a matter of law, the findings of fact and conclusions of law are not supported by the record, and the court has allowed the Commission to exceed its statutory authority and to act arbitrarily.

For these reasons, I would vacate the judgment and remand the cause for entry of a declaratory judgment in favor of plaintiffs and against the Commission and for further proceedings.