2013 COA 172M

**COLORADO ETHICS WATCH and Colorado Common Cause, Plaintiffs–Appellees and Cross–Appellants,**

**and**

**David Paladino; Michael Cerbo; Pro–Choice Colorado PAC; PPRM Ballot Issue Committee; and Citizens for Integrity, Inc., Plaintiffs–Appellees,**

**v.**

**Scott GESSLER, in his official capacity as Colorado Secretary of State, Defendant–Appellant and Cross–Appellee.**

**Court of Appeals No. 12CA1712**

Colorado Court of Appeals,
Div. VI.

Announced December 12, 2013

As Modified on Denial of Rehearing
February 27, 2014

Luis Toro, Margaret Perl, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant Colorado Ethics Watch.

Hill & Robbins, P.C., Jennifer H. Hunt, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant Colorado Common Cause.

Heizer Paul Grueskin, LLP, Mark G. Grueskin, Denver, Colorado, for Plaintiffs–Appellees.

John W. Suthers, Attorney General, Leeann Morrill, First Assistant Attorney General, Frederick R. Yarger, Assistant Solicitor General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by JUDGE FURMAN

¶ 1 Defendant, Scott Gessler, in his official capacity as Colorado Secretary of State (Secretary), appeals the district court's judgment invalidating several of his campaign finance rules because they conflict with the Campaign and Political Finance Amendment (Amendment), Article XXVIII of the Colorado Constitution; and the Fair Campaign Practices Act (FCPA), sections 1–45–101 to –118, C.R.S.2013. The Secretary urges us to reverse based on judicial deference to his rulemaking authority.

¶ 2 Colorado Ethics Watch and Colorado Common Cause (collectively, Ethics Watch) cross-appeal the district court's judgment refusing to invalidate one of the Secretary's rules because this rule was sufficiently similar to a rule that preceded it that it was entitled to deference. Ethics Watch urges us to reverse because the court gave too much deference to the Secretary's new rule.

¶ 3 Because we disagree with the Secretary, and agree with Ethics Watch, we affirm in part and reverse in part.

**I. The Amendment**

¶ 4 The Amendment is a comprehensive initiative regulating campaign financing. *See Sanger v. Dennis*, 148 P.3d 404, 407 (Colo.

App.2006).. Its purpose is to require various participants in the election process, such as "issue committees" and "political committees," to comply with disclosure requirements, and it requires public disclosure filings when certain types of advertisements, called "electioneering communications," are distributed in the last weeks of an election. *See* Colo. Const. art. XXVIII, § 2(2); *Independence Inst. v. Coffman*, 209 P.3d 1130, 1135 (Colo.App.2008).

¶ 5 The Amendment includes a two-track system for enforcing disclosure requirements. Late disclosures are subject to a fine of fifty dollars per day, which may be reduced by the Secretary on a showing of "good cause." Colo. Const. art. XXVIII, § 10(2). Other violations of the Amendment and the FCPA are enforced through a litigation process. Colo. Const. art. XXVIII, § 9(2)(a). In this process, "any person" may file a complaint with the Secretary. *Id.* The Secretary then refers the case to an administrative law judge for resolution. *Id.*

### A. The Amendment's Definitions

¶ 6 The Amendment also includes numerous definitions applicable to its campaign finance provisions. As relevant to this case, an "issue committee" is defined as follows:

> any person, other than a natural person, or any group of two or more persons, including natural persons ... [t]hat has *a major purpose* of supporting or opposing any ballot issue òr ballot question; or ... [t]hat has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question.

Colo. Const. art. XXVIII, § 2(10)(a) (emphasis added).

¶ 7 Article XXVIII, section 2(12)(a), defines "political committee" as "any person, other than a natural person, or any group of two or more persons, including natural persons that have accepted or made contributions or *expenditures* in excess of $200 to support or oppose the nomination or election of one or more candidates." (Emphasis added.) Article XXVIII, section 2(8)(a), defines an "expenditure" as money spent "for the purpose of expressly advocating" the election or defeat of a candidate or ballot measure.

¶ 8 Article XXVIII, section 2(7)(a), defines "electioneering communication" as follows:

> any communication ... that ... [u]nambiguously refers to any candidate; and ... [i]s broadcasted, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election; and ... [i]s broadcasted to, printed in a newspaper distributed to, mailed to, delivered by hand to, or otherwise distributed to an audience that includes members of the electorate for such public office.

### B. The FCPA

¶ 9 Consistent with the Amendment's purpose and its definitions, the FCPA requires issue committees and political committees to register and report all contributions, the names and addresses of all persons who contribute twenty dollars or more, and all expenditures. *See* § 1–45–108(I)(a)(I), (2.5), C.R.S. 2013.

¶ 10 In 2007, the FCPA was amended to add "political organizations" to its provisions and to require these organizations to file reports of contributions and "spending" in excess of twenty dollars. § 1–45–103(14.5); *see* § 1–45–108.5 (providing disclosure requirements for "political organizations"). The FCPA defines "political organization" as follows:

> a political organization defined in section 527(e)(1) of the federal 'Internal Revenue Code of 1986', as amended, that is engaged in influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any state or local public office in the state and that is exempt, or intends to seek any exemption, from taxation pursuant to section 527 of the internal revenue code.

§ 1–45–103(14.5). Under 26 U.S.C. § 527(e)(1)-(2), an entity is a "political organization" if it is "organized and operated primarily for the purpose of ... influencing or attempting to influence" an election.

¶ 11 In 2010, the General Assembly amended section 1–45–103(12)(b) to define

the phrase "a major purpose" (which appears in Article XXVIII, section 2(10)(a)) in part, as follows:

> support of or opposition to a ballot issue or ballot question that is reflected by ... [a]n organization's specifically identified objectives in its organizational documents at the time it is established or as such documents are later amended; or demonstrated pattern of conduct based upon its ... [a]nnual expenditures in support of or opposition to a ballot issue or ballot question....

## II. The Secretary's Rulemaking

¶ 12 In 2012, the Secretary issued new campaign finance rules to clarify "the increasingly confusing field of campaign finance law." He promulgated some of these new rules to incorporate what he felt were controlling legal standards announced in federal and state court decisions. The Secretary's new rules addressed several of the definitions found in the Amendment and the FCPA.

¶ 13 Two groups of plaintiffs, (1) Ethics Watch and (2) David Paladino, Michael Cerbo, Pro-Choice Colorado PAC, PPRM Ballot Issue Committee, and Citizens for Integrity, Inc. (collectively Paladino), filed separate suits for judicial review, challenging certain of these new rules as exceeding the Secretary's authority to administer and enforce Colorado's campaign finance laws. These complaints were consolidated.

¶ 14 After briefing and oral argument, the district court issued a lengthy, well-reasoned order. The court respected the Secretary's "pragmatism" in attempting to harmonize Colorado campaign finance laws with judicial decisions through his rulemaking. But, the court determined that the Secretary lacked the authority to do so. Its judgment invalidated a number of the Secretary's new rules, including Rules 1.12, 1.18, 7.2, 1.10, and 18.1.8, because they contradicted the Amendment and the FCPA. Yet, the district court upheld the validity of the new Rule 1.7 because this rule was sufficiently similar to the rule preceding it that it was entitled to deference.

¶ 15 On appeal, the Secretary challenges the district court's judgment invalidating his new rules. On cross-appeal, Ethics Watch seeks reversal of the district court's determination as to new Rule 1.7.

¶ 16 We first turn to the Secretary's challenges. Because the parties disagree over what standard of review applies to this case, we begin by identifying the standards that guide our analysis.

## III. Standard of Review

¶ 17 The Secretary is the official in Colorado authorized to "[p]romulgate such rules in accordance with article 4 of title 24, C.R.S., or any successor section, as may be necessary to administer and enforce" the state's campaign finance laws. Colo. Const. art. XXVIII, § 9(1)(b); *see also* § 1–45–111.5(1), C.R.S.2013. Thus, campaign finance rules must comply with the Administrative Procedure Act (APA), sections 24–4–101 to –108, C.R.S.2013. The APA provides two standards that guide our review in this case. First, an administrative agency may not issue a rule

> except within the power delegated to the agency and as authorized by law. A rule shall not be deemed to be within the statutory authority and jurisdiction of any agency merely because such rule is not contrary to the specific provisions of a statute. Any rule or amendment to an existing rule issued by any agency ... which conflicts with a statute shall be void.

§ 24–4–103(8)(a), C.R.S.2013.

¶ 18 Second, a reviewing court may invalidate an agency rule if the rule is:

> arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law.

§ 24–4–106(7), C.R.S.2013.

¶ 19 Although a reviewing court may defer to the agency that adopts a rule pursuant to

its authorizing statute, *see Tivolino Teller House, Inc. v. Fagan*, 926 P.2d 1208, 1215 (Colo.1996), this deference is not unlimited. In *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Dep't of Revenue*, 919 P.2d 894, 897 (Colo.App.1996), a division of this court cited, with approval, the well-known *Chevron* standard for judicial review of agency actions. According to this standard, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Id.* at 897 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

¶ 20 The first question is "whether [the legislature] has directly spoken to the precise question at issue." *Id.* at 897. "If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *Id.*; *see Shaw v. 17 West Mill St., LLC*, 2013 CO 37, ¶ 13, 307 P.3d 1046 (we look to the "plain meaning" of the statutory language to see if the intent of the legislature is "clear").

¶ 21 But, if the legislature has not directly addressed the precise question because "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Wine & Spirits Wholesalers*, 919 P.2d at 897; *see Davidson v. Sandstrom*, 83 P.3d 648, 654 (Colo.2004) (statutes are ambiguous if they are "reasonably susceptible to more than one interpretation") (internal quotation marks omitted).

¶ 22 Accordingly, if the legislature, through silence or ambiguous language, "has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Wine & Spirits Wholesalers*, 919 P.2d at 897; *see United States v. Mead Corp.*, 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778; *see Eckley v. Colo. Real Estate Comm'n*, 752 P.2d 68, 75 (Colo.1988) ("[T]o set aside agency action ... on the ground that it was arbitrary and capricious, the court must find that the action is unsupported by any competent evidence" in the record); *Schlapp v. Colo. Dep't of Health Care Policy & Fin.*, 2012 COA 105, ¶ 19, 284 P.3d 177 (rules are contrary to a statute if they are "inconsistent" or "conflict" with it). If there is no express delegation of authority, the legislature may also implicitly delegate a particular question to an agency. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*; *see Mead Corp.*, 533 U.S. at 227–30, 121 S.Ct. 2164.

¶ 23 We also apply the same standard of review to rules adopted pursuant to an authorizing constitutional amendment, such as a citizen-initiated measure: we look first to the plain meaning of the amendment to see if the intent of the electorate is clear, but, if it is silent or ambiguous, we defer to the Secretary's rule, unless that rule is arbitrary, capricious, or manifestly contrary to the amendment. *See Zaner v. City of Brighton*, 917 P.2d 280, 283 (Colo.1996); *see also Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 33, 304 P.3d 217.

¶ 24 With these standards in mind, we turn to the Secretary's contentions.

## IV. The Secretary's Contentions

¶ 25 The Secretary contends that the district court erred in invalidating Rules 1.12, 1.18, 7.2, 1.10, and 18.1.8. The premise of his contention is straightforward: we should defer to his rulemaking authority, and uphold these rules, because they fill gaps in the Amendment and FCPA. We address each of these rules in turn.

### A. Rule 1.12—"Major Purpose"

¶ 26 The Secretary contends that Rule 1.12 fills a gap in section 1–45–103(12)(b) by clarifying the specific question of "how an entity must weigh its expenditures" to establish a major purpose through a "demonstrated pattern of conduct." We conclude that section

1–45–103(12)(b) is ambiguous because the phrase "demonstrated pattern of conduct" is susceptible to more than one interpretation. *See Davidson,* 83 P.3d at 654.

¶ 27 This ambiguity becomes apparent when we look at the plain meaning of the words "pattern" and "demonstrated." *See Shaw,* ¶ 13.

¶ 28 The term "pattern" is not defined in section 1–45–103(12)(b). "Pattern" is commonly defined as "a combination of … acts … forming a consistent or characteristic arrangement." *Webster's College Dictionary* 991 (1991). Under section 1–45–103(12)(b)(II)(A), the acts that are combined into a consistent arrangement, which constitutes an organization's "pattern of conduct," are that organization's "[a]nnual expenditures in support of or opposition to a ballot issue or ballot question." So, an organization's "pattern of conduct" is a combination of that organization's annual expenditures that forms a consistent or characteristic arrangement.

¶ 29 Yet, the phrase "pattern of conduct" is modified by "demonstrated." "Demonstrated" is the past participle of the verb "to demonstrate," which is commonly defined as "to … prove." *Webster's College Dictionary* 360 (1991). Hence, an organization's "pattern of conduct" must be proven to reflect that organization's "major purpose." Because section 1–45–103(12)(b), does not define how or when such a "pattern of conduct" is proven, this section is susceptible to more than one interpretation. Accordingly, we conclude section 1–45–103(12)(b)'s definition of "major purpose" is ambiguous. *See Davidson,* 83 P.3d at 654.

¶ 30 Given this ambiguity, and the Secretary's express authority to administer the statute, we next address whether Rule 1.12 is arbitrary, capricious, or manifestly contrary to the statute. *See* Colo. Const. art. XXVIII, § 9(1)(b); *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. We conclude it is.

¶ 31 Rule 1.12.3 defines "major purpose," in part, as follows:

For purposes of determining whether an issue committee has "a major purpose" under Article XXVIII, Section 2(10)(a)(I)

and section 1–45–103(12)(b)(II)(A), C.R.S., a demonstrated pattern of conduct is established by:

(a) Annual expenditures in support of or opposition to ballot issues or ballot questions *that exceed 30% of the organization's total spending* during the same period . . . .

(Emphasis added.)

¶ 32 We conclude that Rule 1.12 is arbitrary and capricious because the thirty percent threshold is unsupported by competent evidence in the record. *See* § 24–4–106(7); *Eckley,* 752 P.2d at 75; *see also Regular Route Common Carrier Conference of Colo. Motor Carriers Ass'n v. Pub. Utils. Comm'n,* 761 P.2d 737, 752 (Colo.1988) ("testimony and other submissions made at the rulemaking proceeding" can be competent evidence). Indeed, the Secretary does not point to any place in the record where he considered competent evidence about a thirty percent threshold. *See* C.A.R. 28(k).

¶ 33 Even if there was competent evidence in the record to support a thirty percent threshold, we cannot envision how this threshold would resolve the ambiguity as to how a "pattern of conduct" must be "demonstrated." Indeed, Rule 1.12's thirty percent threshold seems to make an organization's "pattern of conduct" irrelevant to determining its "major purpose." This rule does not evaluate the consistent or characteristic combination of expenditures made by an organization but, instead, imposes a threshold that applies regardless of how many expenditures are made and whether the expenditures are consistent or characteristic.

¶ 34 For example, under Rule 1.12, if an organization makes only one expenditure in a single year, and that expenditure supports or opposes a ballot question, the organization would have a "major purpose" of supporting or opposing a ballot question because that one expenditure would constitute one hundred percent of its total spending. Yet, one expenditure cannot constitute a pattern because a pattern, by definition, is a combination of multiple acts. On the other hand, an organization that makes multiple expenditures, on a regular basis, that support or oppose a ballot question, but that do not

constitute thirty percent of the organization's total spending, would not have a "major purpose" of supporting or opposing a ballot question under Rule 1.12, even though the expenditures might form a consistent or characteristic arrangement. *See* § 1–45–103(12)(b).

¶ 35 Thus, Rule 1.12's thirty percent threshold is manifestly contrary to section 1–45–103(12)(b)'s use of the phrase "pattern of conduct" in its definition of "major purpose." *See* § 1–45–103(12)(b).

## B. Rule 1.18—"Political Committee"

¶ 36 The Secretary also contends that the district court erred by invalidating Rule 1.18 because the rule fills a gap in Article XXVIII, section 2(12)(a), by "explain[ing] precisely" how the judicially-created "major purpose" test limits what groups qualify as political committees. *See Colo. Right to Life Comm., Inc. v. Coffman*, 498 F.3d 1137 (10th Cir.2007) (reading "major purpose" test into the Amendment's definition of "political committee" to avoid First Amendment violations); *Alliance for Colo.'s Families v. Gilbert*, 172 P.3d 964 (Colo.App.2007) (holding that the definition of "political committee" in the Amendment, as applied, would violate organization's First Amendment rights absent a "major purpose" test). We disagree.

¶ 37 Rule 1.18.2 defines "political committee" as including the following:

a person or group of persons that support or oppose the nomination or election of one or more candidates as its major purpose. For purposes of this Rule, *major purpose* means:

(a) The organization specifically identifies supporting or opposing the nomination of one or more candidates for state or local public office as a primary objective in its organizing documents; or

(b) Annual expenditures made to support or oppose the nomination or election of one or more candidates for state or local public office are a majority of the organization's total spending during the same period.

(Emphasis added.)

¶ 38 We conclude that Rule 1.18.2 is invalid because the provisions of Article XXVIII, section 2(12)(a), are clear and unambiguous: political committees are defined by their contributions or expenditures, not by an additional major purpose test. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778; *Wine & Spirits Wholesalers*, 919 P.2d at 897. Because the provisions are clear, there is no gap for the Secretary to fill, and he does not have the authority to add a "major purpose" requirement, even in an attempt to codify judicial precedent. *See Colo. Common Cause v. Gessler*, 2012 COA 147, ¶ 18, —— P.3d ——, 2012 WL 3755615 (*cert. granted* May 28, 2013); *Sanger*, 148 P.3d at 412; *Alliance for Colo.'s Families*, 172 P.3d at 972 (courts may not "rewrite state laws to conform [to] constitutional requirements where doing so would be inconsistent with legislative, or here, the state citizenry's intent") (quoting *Colo. Right to Life Comm., Inc.*, 498 F.3d at 1154–55).

## C. Rules 7.2 and 1.10—"Political Organization"

¶ 39 The Secretary also contends that the district court erred in invalidating Rules 7.2 and 1.10 because the rules fill a gap in section 1–45–103 (14.5) by narrowing the definition of the phrase "political organization" to conform to federal judicial precedent. We disagree based on the clear and unambiguous definitions of and distinctions between "political committees" and "political organizations."

¶ 40 As noted, Article XXVIII, section 2(12)(a), defines "political committee" as an entity that accepts or makes "contributions" or "expenditures" in excess of two hundred dollars to support or oppose candidates. Article XXVIII, section 2(8)(a) defines "expenditure" as moneys spent "for the purpose of expressly advocating" the election or defeat of a candidate or ballot measure. Thus, these definitions show that an organization is required to register, report, and comply with contribution limitations as a "political committee" only when it makes express advocacy

expenditures. *Colo. Ethics Watch v. Senate Majority Fund*, 2012 CO 12, ¶¶ 18–19, 269 P.3d 1248.

¶ 41 In contrast, a "political organization" is defined as a group organized under section 527 of the Internal Revenue Code "engaged in influencing or attempting to influence" any candidate election in Colorado. § 1–45–103(14.5).

¶ 42 Rule 7.2.1, however, defines "political organization" as follows:

For purposes of section 1–45–108.5, C.R.S., an entity is considered a political organization only if [it]:

(a) Has as its major purpose influencing or attempting to influence elections as defined in Rule 1.10; and

(b) Is exempt, or intends to seek exemption, from taxation by the Internal Revenue Service.

¶ 43 Rule 1.10 also states:

"Influencing or attempting to influence," for purposes of political organizations as defined in section 1–45–103(14.5), C.R.S., means making expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate or candidates.

¶ 44 The district court compared the Secretary's rules and the statutes and found as follows:

[T]he Secretary's rules improperly narrow the definition of "political organization." Under the statute, it is an organization that "is engaged in" influencing elections or appointments of individuals to public office. Under Rule 7.2.1, this is narrowed to organizations with a "major purpose" in influencing elections. Rule 1.10 further narrows the definition to groups which "expressly advocate" for or against candidates. These narrowing rules effectively eliminate distinctions between "political organization" and "political committee." ... Such a result is contrary to the clear terms of the statute and the intent of the legislature.

¶ 45 We agree with the district court and conclude that Rules 7.2 and 1.10 are invalid. The Secretary's addition in Rule 7.2 of a requirement that a section 527 entity must have a "major purpose" of influencing Colorado elections contradicts the clear and unambiguous language of section 1–45–103(14.5). This statute does not look to the purpose of the entity but to the actual activities of the entity. And, the Secretary's addition in Rule 1.10 of an "express advocacy" requirement also contradicts the clear and unambiguous language of this statute. This statute requires an entity that is exempt, or intends to seek exemption, as a "political organization" under section 527 of the Internal Revenue Code to disclose expenditures over twenty dollars. *See* § 1–45–108.5(1)(a)–(b). These rules thus contradict the clear and unambiguous language of the statutes by improperly eliminating the statutory distinction between a political organization and a political committee. *See Alliance for Colo.'s Families*, 172 P.3d at 972; *Sanger*, 148 P.3d at 412.

¶ 46 Yet, the Secretary contends that Rule 7.2 only codifies a "major purpose" test that is found in section 527 of the Internal Revenue Code. We disagree. There is no major purpose test in section 527. Under section 527, a "political organization" must be "organized and operated primarily for the purpose of ... influencing or attempting to influence" an election. 26 U.S.C. § 527(e)(1)–(2).

¶ 47 The Secretary also contends that, because the phrase "influencing or attempting to influence" in section 527(e)(1) is "vague[ ]," "ambiguous," and "over-[broad]," based on the reasoning of *Buckley v. Valeo*, 424 U.S. 1, 74–82, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), he has the authority to define this phrase. We disagree.

¶ 48 *Buckley* construed the phrase "for the purpose of ... influencing" that was contained in the definitions of "contributions" and "expenditures" in a federal statute. *Id.* at 74–75, 96 S.Ct. 612. This federal statute required "every person" who made a certain level of contributions or expenditures, which were "for the purpose of ... influencing" elections, to file a disclosure statement. *Id.* at 74–77, 96 S.Ct. 612. *Buckley* held that this "every person" requirement "[i]n its effort to be all-inclusive ... raises serious problems of vagueness" and "narrow[ed]" the

phrase, "for the purpose of ⋅ ... influencing," to restrict the provision from "reach[ing]" people who were only exercising their First Amendment rights to discuss issues, and not advocating for an election result. *Id.* at 76–79, 96 S.Ct. 612.

¶ 49 But, unlike the statute at issue in *Buckley,* Colorado's statute does not require every person to file a contribution report when he or she spends money to influence elections. *See* § 1–45–103(14.5). It only requires "political organizations," which are organizations exempt under section 527 and "organized and operated primarily for the purpose of influencing and attempting to influence" an election, to file reports. *Id.*; *see* 26 U.S.C. § 527(e)(1)-(2). Colorado's statute cannot, by definition, reach people who only want to discuss issues—its disclosure requirements clearly apply only to organizations that are already engaged in influencing or attempting to influence elections. Thus, *Buckley*'s "vagueness" analysis is inapplicable to determining whether Colorado's statute is ambiguous. *See Buckley,* 424 U.S. at 79–80, 96 S.Ct. 612; *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 386–71, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (no "express advocacy" limitation is constitutionally required when a law requires only disclosure of election-related spending).

### D. Rule 18.1.8—"Good Cause"

¶ 50 The Secretary finally contends that the district court erred by invalidating Rule 18.1.8 because the rule's definition of the phrase "set aside or reduce the penalty ... upon a showing of good cause" fills a gap in section 1–45–108(2.5) by creating a uniform way to assess "good cause" and levy fines. We disagree.

¶ 51 Section 1–45–108(2.5) describes the conditions under which certain political groups must file reports about major contributions:

In addition to any report required to be filed with the [Secretary] ..., under this section, all candidate committees, political committees, issue committees, and political parties shall file a report with the [Secretary] of any contribution of one thousand dollars or more at any time within thirty days preceding the date of the primary election or general election. This report shall be filed with the [Secretary] no later than twenty-four hours after receipt of said contribution.

¶ 52 In turn, section 1–45–111.5(1)(c), C.R.S.2013, imposes the following penalty for failure to file the so-called "major contributor" report under section 1–45–108(2.5): "fifty dollars per day for each day that [the] report [required to be filed] is not filed." But, the Secretary may, on receiving an appeal of the penalty, "set aside or reduce the penalty [for failure to file a report] upon a showing of good cause." Colo. Const. art. XXVIII, § 10(2)(c).

¶ 53 Rule 18.1.8(a), however, states:

Penalties assessed for failure to timely file a Major Contributor Report under section 1–45–108(2.5), C.R.S., stop accruing on the date that the contribution is first disclosed, either on the Major Contributor Report or the regularly-scheduled Report of Contributions and Expenditures. Penalties will not accrue beyond the date of the general election.

¶ 54 The district court compared the Rule and the statutes and found as follows:

[Rule 18.1.8] abrogates the fifty dollar per day penalty once a contributor is identified in any report.... But the rule goes too far and cuts off all penalties as of the date of the general election.

This substantially denudes the statutory penalty.... As such, this rule is beyond the Secretary's powers under *Sanger v. Dennis,* 148 P.3d 404 (Colo.App.2006); *Wine & Spirits Wholesalers v. Colo. Dep't of Revenue,* 919 P.2d 894, 897 (Colo.App.1996). He thus has exceeded his delegated authority under C.R.S. § 24–4–103(8)(a).

¶ 55 We agree and conclude that Rule 18.1.8 is invalid. Rule 18.1.8 merely eliminates penalties after a contribution is first disclosed and after election day regardless of a showing of good cause. *See Alliance for Colo.'s Families,* 172 P.3d at 972; *Sanger,* 148 P.3d at 412. Indeed, Rule 18.1.8 applies equally to those who intentionally avoid reporting obligations as to those who do not report due to inadvertence. So, because

Rule 18.1.8 does not fill a gap, but applies irrespective of whether there is actually good cause to reduce or eliminate penalties, this rule is manifestly contrary to Article XXVIII. *See* § 24–4–106(7); *Zaner*, 917 P.2d at 283.

¶ 56 We now turn to Ethics Watch's cross-appeal.

## V. Rule 1.7—"Electioneering Communication"

¶ 57 Ethics Watch contends the district court erred in not invalidating Rule 1.7 because this rule contravenes the clear and unambiguous definition of "electioneering communication" found in Article XXVIII, section 2(7)(a). We agree.

¶ 58 Rule 1.7 defines "electioneering communication" as follows:

"Electioneering communication" is any communication that (1) meets the definition of electioneering communication in Article XXVIII, Section 2(7), and (2) is the *functional equivalent* of express advocacy. When determining whether a communication is the functional equivalent of express advocacy:

1.7.1 A communication is the functional equivalent of express advocacy only if it is subject to no reasonable interpretation other than an appeal to vote for or against a specific candidate.

1.7.2 In determining whether a communication is the functional equivalent of express advocacy, it shall be judged by its plain language, not by an "intent and effect" test, or other contextual factors.

1.7.3 A communication is not the functional equivalent of express advocacy if it:

(a) Does not mention any election, candidacy, political party, opposing candidate, or voting by the general public,

(b) Does not take a position on any candidate's or officeholder's character, qualifications, or fitness for office, and

(c) Merely urges a candidate to take a position with respect to an issue or

urges the public to adopt a position and contact a candidate with respect to an issue.

(Emphasis added.)

¶ 59 As noted, Article XXVIII, section 2(7)(a), defines "electioneering communication" to include all communication that "[u]nambiguously refers to any candidate." But, Rule 1.7 defines it only as communication that is the functional equivalent of express advocacy. Thus, the plain language of Rule 1.7 restricts the type of communication that would fall in the category of "electioneering communication" because it adds a "functional equivalence" test. *See* §§ 24–4–103(8)(a), 24–4–106(7); *see also Sanger*, 148 P.3d at 412. Accordingly, we conclude that Rule 1.7 is invalid because the constitutional provisions are clear and unambiguous that all communication unambiguously referring to a candidate is electioneering communication, leaving no gap for the Secretary to fill. *See Alliance for Colo.'s Families*, 172 P.3d at 972; *Sanger*, 148 P.3d at 412.

¶ 60 The Secretary relies on *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 468, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007), for the proposition that the "functional equivalence" test must be read into the phrase "electioneering communication" to conform to First Amendment standards. This reliance is misplaced. The definition of "electioneering communication" in Article XXVIII, section 2(7)(a), is clear, *see Wine & Spirits Wholesalers*, 919 P.2d at 897, and does not include a "functional equivalence" test, *see Colorado Ethics Watch*, ¶ 36 n. 8 (Article XXVIII, section 2(7)(a) defines "'electioneering communications' broadly in the sense that it covers speech that 'unambiguously refers' to any candidates but also narrowly in the sense that it only applies within the limited 'electioneering' window and to speech costing more than $1000"). Again, although the Secretary's attempt to conform Article XXVIII, section 2(7)(a), to constitutional standards is understandable, it exceeds his authority to "administer and enforce" the law. *See* § 24–4–103(8)(a).

¶ 61 We conclude with one final observation. Our application of the deference standards described above is not based on policy choices; it is a means of giving effect to the

intent of the citizenry expressed in the Amendment, and the intent of the General Assembly expressed in the FCPA. *See Hernandez–Carrera v. Carlson*, 547 F.3d 1237, 1247 (10th Cir.2008).

¶ 62 The judgment is affirmed as to Rules 1:12.3, 1.18, 7.2 and 1.10, and 18.1.8, but reversed as to Rule 1.7.

JUDGE CARPARELLI and JUDGE GABRIEL concur.