2014 COA 17

**COLORADO AIRPORT PARKING, LLC, d/b/a USAirport Parking; Green Park Denver, LLC; and CFS 2907 Denver, LLC, d/b/a The Parking Spot, Plaintiffs–Appellants,**

v.

**DEPARTMENT OF AVIATION OF The CITY AND COUNTY OF DENVER; and Kim Day, in her capacity as Manager of Aviation, Defendants–Appellees.**

**Court of Appeals No. 13CA0188**

Colorado Court of Appeals,
Div. V.

Announced February 27, 2014

Bryan Cave LLP, Steven J. Perfrement, Stephen D. Rynerson, Denver, Colorado, for Plaintiffs–Appellants

D. Scott Martinez, City Attorney, Debra Overn, Assistant City Attorney, John Redmond, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees

Opinion by JUDGE RICHMAN

¶1 Plaintiffs, Colorado Airport Parking, LLC; Green Park Denver, LLC; and CFS 2907 Denver, LLC, appeal the district court's order in favor of defendants, the Department of Aviation of The City and County of Denver and its manager, Kim Day (department), denying plaintiffs any of the relief they requested under C.R.C.P. 106(4). We vacate the order and remand the case for further proceedings.

## I. Background

¶2 Plaintiffs own large parking lots located on private land proximate to Denver International Airport (DIA) and provide their customers with shuttle service to and from the airport. This dispute arose when the department implemented Rule 100.22 of its Ground Transportation Rules and Regulations.

¶3 Before the new rule, off-site parking lot operators, such as plaintiffs, paid an "access fee" for each shuttle trip to the airport based on the size of the vehicle and a "dwell fee" for any trip exceeding fifteen minutes, as did some other shuttle bus operators. Pursuant to Rule 100.22, plaintiffs were no longer assessed an access fee (though dwell fees still applied) and instead were assessed a "privilege fee" of eight percent of their gross revenues. Under the new fee structure, the total fees paid by two plaintiffs increased

significantly, though the fees paid by one plaintiff decreased.

¶ 4 Plaintiffs filed separate petitions challenging Rule 100.22, which were consolidated into a single proceeding before a hearing officer. Plaintiffs argued that Rule 100.22 should be invalidated because (1) it violates section 5–16(e) of the Denver Revised Municipal Code regarding allocation of airport expenses; (2) the department failed to follow the proper procedures in promulgating Rule 100.22; and (3) the rule amounts to an improper tax. After a two-day hearing, the hearing officer issued an order denying the petitions on all grounds.

¶ 5 Plaintiffs filed a complaint in the district court, asserting four claims for relief: (1) judicial review, pursuant to C.R.C.P. 106; (2) declaratory relief, pursuant to section 13–51–106, C.R.S. 2013; (3) declaration of invalidity as an impermissible tax; and (4) injunctive relief, pursuant to C.R.C.P. 106(a)(4)(V) and 65. After reviewing the administrative record but without holding a hearing, the district court issued an order denying all of plaintiffs' requests for relief.

## II. Issues on Appeal

¶ 6 Plaintiffs contend that the district court's order must be reversed because (1) the hearing officer misapplied the law in his determination that the department reasonably apportioned the expenses of the airport and (2) the district court erred by dismissing their C.R.C.P. 57 claim without a hearing. Plaintiffs do not argue on appeal that the fee structure is an impermissible tax.

### A. Reasonable Apportionment

¶ 7 Section 5–16(e) provides:

The manager of aviation shall have the power and authority and is hereby empowered and authorized to establish and set rates, fees and charges as shall be necessary to meet the needs for operating the Denver Municipal Airport System including without limitation the expenses for bonded indebtedness of the system, its operating expenses, and expenses for construction, reconstruction, replacement, repair and any similar activity for any facility within the system. *The manager of avia-*

*tion shall be further empowered,* consistent with all applicable bond ordinances, *to reasonably apportion these expenses among the airlines, concessionaires, businesses and other users of the system based upon their present or future projected use of the facilities.*

Denver Rev. Mun. Code 5–16(e) (emphasis added).

¶ 8 This provision does not expressly state that the manager "must" apportion expenses in a reasonable manner, merely that he or she "is empowered" to do so. Nonetheless, the parties and prior case law accept the proposition that "reasonable apportionment" of expenses is required. *See Thrifty Rent-A–Car System, Inc. v. City & Cnty. of Denver,* 833 P.2d 852, 854 (Colo.App.1992). "Reasonable apportionment" is not defined or otherwise delineated in the Revised Municipal Code. Plaintiffs contend that the hearing officer misapplied the applicable law when he determined that Rule 100.22 reasonably apportions the airport's expenses. We agree in part.

### 1. Standard of Review

¶ 9 C.R.C.P. 106(a)(4) provides for relief when a governmental body exercising quasi-judicial functions has exceed its jurisdiction or abused its discretion, and judicial review is limited to a determination of whether the body has exceeded its jurisdiction or abused its discretion based on the evidence in the record. C.R.C.P. 106(a)(4)(I). A presumption of validity and regularity attaches to a governmental proceeding, and the burden is on the party challenging that body's action to demonstrate an abuse of discretion. *Kruse v. Town of Castle Rock,* 192 P.3d 591, 601 (Colo.App.2008).

¶ 10 In reviewing the hearing officer's decision pursuant to C.R.C.P. 106(a)(4), we apply the same standard of review as the district court. *Alpenhof, LLC v. City of Ouray,* 2013 COA 9, ¶ 9, 297 P.3d 1052. We must affirm the hearing officer's decision unless he abused his discretion or exceeded his jurisdiction. *Id.* An abuse of discretion occurs if the hearing officer misapplies the law or

there is no evidence in the record to support his decision. *Id.*

## 2. Analysis

¶ 11 We begin our analysis with an explanation of the expenses which the department was seeking to apportion. For accounting purposes, DIA maintains different "cost centers" and allocates revenues and costs to the different centers in an effort to match the costs incurred to maintain each center with the primary users of that center. The cost center at issue here is the "ground transportation cost center" (GTCC), and the main costs allocated to that center relate to the direct and indirect expenses for the construction and maintenance of roads and ramps and police, fire, and other personnel services.

¶ 12 Airport representatives testified that the GTCC includes costs that are assigned to several smaller cost centers, such as "Commercial Vehicle Level 5" (CVL5). CVL5 identifies the cost center for expenses related to the exclusive roadway for commercial vehicles which access the terminal, such as the shuttle buses used by plaintiffs, rental car companies, and hotels, as well as RTD buses. According to the testimony presented at the hearing, even though some costs associated with Levels 4 and 6 (which are not used by plaintiffs) are listed under the GTCC, those costs are actually allocated to a different cost center.

¶ 13 In 2009, the department determined that the GTCC was operating at a "loss"; that is, the expenses associated with the cost center exceeded the revenues derived from the businesses that used the facilities maintained by the cost center. The manager sought to address this deficit by cutting expenses and then by seeking higher revenues. The manager decided to pursue higher revenues by employing two approaches. First, access fees for commercial vehicles were increased by ten percent. This increase applied to plaintiffs' shuttles, hotel shuttles, mountain shuttles, limousines, and taxis. Later, the manager decided to impose a revenue-based fee on off-site parking lot operators, similar to the one already being imposed on car rental companies.

¶ 14 The hearing officer concluded that adoption of the rule did not constitute arbitrary or capricious conduct, nor was it lacking "a rational basis in fact or law." The district court concluded that the hearing officer's decision was reasonably supported by the administrative record.

¶ 15 Initially, we reject plaintiffs' contention that the hearing officer's decision must be reversed because it is contrary to *Thrifty Rent–A–Car System,* 833 P.2d at 854. There, a division of this court held that in determining whether the requirement of "reasonable apportionment" under section 5–16 is satisfied, (1) practices at other airports are not dispositive, and (2) the benefit to the user "standing alone, does not address the required apportionment." *Id.* We agree that fee structures at other airports are not dispositive. *See id.* ("[T]he fees paid by Thrifty elsewhere are not dispositive."). However, the hearing officer did not rely exclusively on the fact that other airports charge similar fees based on revenue. Rather, he noted that other airports do so to show that businesses' use of airport facilities "is measured by more than just driving on the roads leading to the airport." And, unlike in *Thrifty,* the hearing officer noted that another group of users at DIA, car rental companies, already paid a revenue-based fee.

¶ 16 Plaintiffs' substantive argument appears to have two distinct components. First, they contend the GTCC includes costs relating to Levels 4 and 6 (which plaintiffs do not use), and thus the pool of costs apportioned to them (and others) is higher than it should be, resulting in the subsidization of other airport users by those who are allocated the GTCC costs. Second, they argue that Rule 100.22 results in a discriminatory allocation of the GTCC costs and therefore violates the "reasonable apportionment" requirement of section 5–16.

### a. Allocation of Costs to GTCC

¶ 17 The first argument appears to revolve around a dispute of fact—that is, whether costs attributable to the operation of Levels 4 and 6 are included in the GTCC. The hearing officer made a finding that "[t]he profit and losses of the overall cost center of the ground

transportation are inclusive of airport levels 4, 5 and 6, which are each used independently by different types of motor traffic...." Although this finding contains some ambiguity, the record supports the determination that the costs associated with Levels 4 and 6 are not included in the GTCC.[1]

¶ 18 To the extent that plaintiffs challenge this factual finding on appeal, we conclude that it is supported by the testimony at the hearing. Plaintiffs do not specifically argue that other costs are improperly allocated to GTCC. Furthermore, there was no testimony that the implementation of Rule 100.22 changed the allocation of costs within the GTCC and no conclusion by the hearing officer as to whether the allocation was reasonable. Thus, we decline to address further this aspect of plaintiffs' claim.

### b. Apportionment of Expenses to Users of Level 5

¶ 19 The second component of the plaintiffs' argument is that Rule 100.22 violates the "reasonable apportionment" requirement of section 5–16 because (1) the department unreasonably discriminated by applying the revenue-based method only to off-site parking operators, and not to other users of Level 5; (2) it implemented the rule without properly analyzing plaintiffs' actual use of the airport; and (3) as a result, the rule disproportionately increased plaintiffs' fees vis-à-vis other users of Level 5. We address each argument in turn.

### i. Treating Off–Site Parking Operators Differently

■ ¶ 20 To the extent that plaintiffs argue that treating other users of the airport differently (in that they are not subject to Rule 100.22) is incompatible with reasonable apportionment, we are not persuaded. As noted above, there is no definition of "reasonable apportionment" in the Revised Municipal Code. Nonetheless, we conclude that a reasonable apportionment is one that has a rational basis. Disparate treatment is not inherently unreasonable if it is based on ra-

tional classifications. *See Allright Colo., Inc. v. City & Cnty. of Denver*, 937 F.2d 1502, 1513 (10th Cir.1991) (concluding that airport officials had a rational basis to treat shuttles servicing offsite parking facilities differently than other shuttle bus services in the interest of reasonably apportioning expenses among users of the airport's facilities); *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Auth.*, 825 F.2d 367, 371 (11th Cir.1987) (concluding that different access fees for off-airport car rental courtesy vehicles and hotel courtesy vehicles is based on rational assessment of the relative benefits and extent of use of each category of vehicles).

■ ¶ 21 Although the rational basis test is also used to test whether a governmental action violates the equal protection clause, we see no reason not to apply a similar analysis to the undefined term "reasonable apportionment" as used in section 5–16. Thus we must determine, as did the *Allright* court, whether there is a rational basis for the different classifications employed by the manager in apportioning costs associated with GTCC. The apportionment need not be "perfect" nor even the best one available. It simply needs to be rational. We conclude there is a rational basis for treating plaintiffs differently than other users of Level 5.

¶ 22 As the record reflects, taxis, hotel shuttles, mountain express vehicles, and limousines are operated by businesses that are not entirely dependent on the airport for their revenues, whereas the off-site parking operator plaintiffs derive virtually all, if not all, of their revenues from customers using the airport. Because taxis, hotel shuttles, mountain express vehicles, and limousines generate only a portion of their revenues through "use" of the airport, the respective uses of each entity differ, and it would be impracticable for the department to assess their fees based on a percentage of their overall revenues. In contrast, because plaintiffs generate all, or almost all, of their revenues through "use" of the airport, it is not unreasonable for the department to employ a

---

1. We note that the district court also concluded that "although costs for levels 4 and 6 are located within the ground transportation code (plaintiffs only use level 5) those expenses are allocated to the terminal building cost center and they are not charged to ground transportation."

different method to assess their fees based on those revenues.

¶ 23 We also conclude that it is rational to use revenues as the basis for assessing fees and apportioning costs to users of airport facilities. Before the implementation of Rule 100.22, many concessionaires, licensees, and users of DIA facilities—including rental car shuttle operations and one private on-airport parking facility—already paid fees based on revenues. Charging commercial users of the airport based on the revenues they generate is not an inherently unreasonable manner to apportion the airport's expenses when those revenues are totally dependent on the airport. A revenue-based fee simplifies the airport's record-keeping and shifts the administrative burden to the user.

¶ 24 Here, the record shows that in addition to raising additional revenue, the new fee structure created administrative cost savings for the department by avoiding disputes with off-site parking operators about trip fees, requiring less staff time to calculate and collect those fees, and thus reducing expenses for the airport. It is rational for the department to employ a revenue collection method that achieves cost savings. *See Qwest Corp. v. Colo. Div. of Prop. Taxation,* 310 P.3d 113, 123 (Colo.App.2011).

### ii.  Whether the Department Analyzed Plaintiffs' Use

¶ 25 The record also appears to show that for the 2010 calendar year, before Rule 100.22 went into effect, the total trips made by shuttles of off-site parking operators constituted approximately 6.4% of the total trips recorded on Level 5, and the trip charges paid by the off-site parking operators (excluding dwell time charges) accounted for approximately 11.9% of the fees collected. By comparison, the total trips made by hotel shuttles constituted approximately 9.2% of the total trips recorded on Level 5, and the

trip charges paid by the hotels (excluding dwell time charges) accounted for 17.7% of the fees collected.

¶ 26 We do not find in the record comparable data for the 2011 calendar year, following implementation of Rule 100.22.[2] Nor are we presented with any projection or estimate of how the revenue-based method would affect the off-site parking operators. We thus agree the record supports the hearing officer's finding that "[n]o analysis was done by the [department] to compare or contrast the dwell time and trip fees between off-airport parking operators and other providers who used the airport roadways, nor whether the change[s] in fees were relative to their present or projected usage."

### iii.  Whether Plaintiffs Were Disproportionately Affected

¶ 27 It is undisputed that under Rule 100.22, which affected only the off-site parking operators, the total amount of costs apportioned to two of the three plaintiffs increased significantly, while their amount of use of Level 5 did not increase. By itself, the increase in total fees to two of the three off-site parking operators does not necessarily amount to an *unreasonable* apportionment, if that result is based on the use of rational factors.

¶ 28 However, here there is no indication in the record as to how the department came to the conclusion that 8% was the appropriate percentage of revenues to charge, with respect to either the effect that percentage would have on reducing the deficit or the effect it would have on the overall amounts paid by plaintiffs. The hearing officer specifically asked the department's witness whether there was an analysis done to get to the 8%, as opposed to some other percentage. Although the witness answered that another section of the department had done one, that

**2.**  Rather, the only data for 2011 appears to relate only to the month of January 2011. If that data, in fact, reflects usage of Level 5 for the month of January 2011, it appears to show that in that one month, the total trips made by the off-site parking operators' shuttles constituted approximately 7.1 % of the total trips recorded on Level 5, and trip charges paid by the off-site parking opera-
tors (excluding dwell time charges) accounted for approximately 11.2% of the fees collected. By comparison, for the same month the total trips made by shuttles of hotels constituted approximately 8.1 % of the total trips recorded on Level 5, and the trip charges paid by the hotels (excluding dwell time charges) accounted for 14.5% of the fees collected.

analysis was never explained or presented on the record. The Mandle report, relied on in part by the department, reflects the percentage fees charged by twenty-three other U.S. airports, and shows that the majority of these airports charge a fee of between 5% and 10%. However, the report does not recommend a percentage for use at DIA, nor did any department witness testify as to why 8% was chosen.

¶ 29 On this record, we are left to guess why the 8% rate was selected, and thus we cannot say that the percentage is "rational" so as to reflect a reasonable apportionment of GTCC costs. The hearing officer did not make any finding that the 8% figure resulted in a reasonable apportionment. Moreover, due to the absence of evidence or information to explain the department's selection of 8% as the revenue figure, we cannot say there was not an abuse of discretion by the department, as it is not clear how the discretion was exercised. *See Colo. Ethics Watch v. Gessler*, 2013 COA 172, ¶ 32, —— P.3d ——, 2013 WL 6511370 (selection of a percentage unsupported by competent evidence in the record is arbitrary and capricious).

¶ 30 For these reasons, we must remand the case to the district court with directions to remand the case for further proceedings before the hearing officer. On remand, the hearing officer shall determine if the use of the 8% figure results is a reasonable apportionment of costs. It is within the discretion of the hearing officer to permit further evidence or argument on the issue.

### B. C.R.C.P. 57

¶ 31 Plaintiffs contend that the district court erred by dismissing their C.R.C.P. 57 claim without a hearing. Based on our resolution of the reasonable apportionment issue, we conclude that this contention is moot.

### III. Conclusion

¶ 32 The district court's order is vacated, and the case is remanded with directions to the district court to remand the case to the hearing officer for additional findings and, if deemed by the hearing officer to be necessary in light of this opinion, another hearing or the receipt of additional evidence.

JUDGE GRAHAM and JUDGE NAVARRO concur.